**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Shane Edward Limbacher, | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | 19 CV 7509 |
| | ) | |
| vs. | ) | Honorable John J. Tharp |
| | ) | |
| Sheriff Thomas Dart, et al. | ) | Jury Trial Demanded |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

NOW COME Defendants, Dr. Yu, Physician Assistant Sims, Physician Assistant Davis, and Dr. McCarthy by and through Kimberly Foxx, Cook County States Attorney, and Defendant Physician Assistant Trammell, by and through his attorneys Jason E. DeVore and Zachary G. Stillman, (collectively "Defendants"), who, pursuant to Fed. R. Civ. P. 56, hereby move this Court to enter an order granting their Motion for Summary Judgment against Plaintiff, Shane Limbacher ("Plaintiff"). In support thereof, Defendants state as follows:

**BACKGROUND**

Plaintiff alleges that the Defendants were deliberately indifferent to his medical needs regarding treatment of his neck, back, and left shoulder after an alleged fall at the Cook County Department of Corrections ("CCDOC") on November 13, 2017. Particularly, Plaintiff focuses on his left shoulder, but Plaintiff failed to even make some of the Defendants aware of an alleged injury to his left shoulder when he was evaluated by them. With other Defendants, while Plaintiff at least reported a shoulder problem, Plaintiff routinely refused the advice of Defendants and wanted to dictate the course of his own treatment. Finally, even if Defendants did not properly treat Plaintiff's shoulder (they did), the totality of care Plaintiff received for injuries from the fall,

including examinations, follow-up appointments, MRIs, X-Rays, physical therapy, cortisone shots, and more, demonstrate that no Defendant acted in an objectively unreasonable manner towards Plaintiff. Because of Plaintiff's own actions towards his course of treatment, the Court should grant Defendants motion for summary judgement because Defendants acted reasonably towards Plaintiff's care.

## STATEMENT OF FACTS

Defendants incorporate by reference their N.D. Ill. Rule 56.1 Statement of Undisputed Material Facts in Support of Motion for Summary Judgment. Pertinent facts are discussed below as they relate to Plaintiff's claims against each specific Defendant.

Further, while at the summary judgment stage a court typically takes disputed facts in favor of the non-moving party, that is not the case with detainee medical cases. *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) (quoting *Beyerbach v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995) (stating "an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed."). The fact is that Plaintiff's version of events is flatly contradicted by the contemporaneous medical records.

## STANDARD OF REVIEW

Summary judgment is "the put up or shut up" moment. *Eberts v. Goderstad*, 569 F. 3d 757, 767 (7th Cir. 2009). A court should grant summary judgment if the movant can show that there is no genuine dispute as to any material fact and that the movant is, therefore, entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The Court construes all evidence and draws all reasonable inferences in the light most favorable to the nonmoving party. *Blow v. Bijora, Inc.* 855 F.3d 793, 797 (7th Cir. 2017). Although the Court may not weigh conflicting evidence or

make credibility determinations, the party opposing summary judgment must point to competent

evidence that would be admissible at trial to demonstrate a genuine dispute of material fact.

*Omnicare, Inc. v. UnitedHealth Grp., Inc.*, 629 F.3d 697, 705 (7th Cir. 2011).  The nonmoving

party must go beyond the pleadings, and by his own affidavits, or by the "depositions, answers to

interrogatories, and admissions on file," designate "specific facts showing that there is a genuine

issue for trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The district court need not

draw inferences in favor of the nonmoving party "that are supported by only speculation or

conjecture."  *Fischer v. Avanade, Inc.*, 519 F. 3d 393, 401 (7th Cir. 2008).

## ARGUMENT

**1. Defendants Were Not Objectively Unreasonable.**

Although Plaintiff's Complaint alleges "deliberate indifference," and that remains the

correct standard for an Eighth Amendment claim for a convicted prisoner, because Plaintiff was

a pretrial detainee at the time of the incidents in the Complaint, the 14th Amendment objective

unreasonableness standard applies.  Plaintiff cannot prove that the Defendants were objectively

unreasonable in response to his alleged fall.

To establish a Section 1983 claim, Plaintiff must demonstrate: (i) that he suffered a

constitutional violation, and (ii) that he suffered such violation from a person acting under color

of state law. *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004).  Liability

under Section 1983 derives from "direct personal responsibility." *Martin v. Cnty. of Kendall*, 561

F. Supp. 726, 727 n.4 (N.D. Ill. 1983) (citing *Crowder v. Lash*, 687 F.2d 996, 1005 (7th Cir.

1982)).

More specifically, to survive motion for summary judgment on a Fourteenth Amendment

due process right to medical care claim, Plaintiff must establish that Defendants: (1) acted

purposefully, knowingly, or recklessly when considering the consequences of handling

Plaintiff's specific medical case; and (2) the Defendants acted in an objectively unreasonable

manner. *Miranda v. County of Lake*, 900 F.3d 335, 353-54 (7th Cir. 2018); *Bell v. Sheriff of*

*Cook County*, 2018 U.S. Dist. LEXIS 198178, at *11 (N.D. IL, November 21, 2018) (Tharp, J.)

citing *Miranda*. "[N]ot every instance of poor medical treatment amounts to a federal

constitutional violation[.]" *Steele v. Choi*, 82 F.3d 175, 176 (7th Cir. 1996) "A showing of

negligence or even gross negligence will not suffice." *Miranda*, at 353. Courts must focus on the

totality of facts and circumstances faced by the individual defendant to "gauge objectively -

without regard to any subjective belief held by the individual - whether the response was

reasonable." *Id.* at 886; *Darnell v. Pineiro*, 849 F.3d 17, 36 (2d Cir. 2017) (concluding that "any

§ 1983 claim for a violation of due process requires proof of a *mens rea* greater than mere

negligence")).

As to the totality of care, courts "must examine the totality of an inmate's medical care

when considering whether that care evidences deliberate indifference to his serious medical

needs." *Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997). In *Gutierrez*, the plaintiff

alleged that he suffered from a cyst that was causing him a significant amount of pain. *Id*. at

1366. The initial examining doctor told Gutierrez that there was "nothing wrong", but one week

later Gutierrez again requested to see the doctor. *Id*. He had to wait an additional two days

before he was evaluated by a nurse, who concluded that the cyst was infected and provided

Gutierrez with some gauze pads before placing him on the "sick call" for the next day. *Id*. But it

was not until four days later that Gutierrez was seen by the doctor. *Id*. Over the next eight

months Gutierrez received additional treatments but experienced a fifteen-day delay in treatment

on two separate occasions. *Id*. The court found that while the doctor's initial assessment of the

4

cyst may have been incorrect, medical malpractice in the form of an incorrect diagnosis or improper treatment does not state an Eighth Amendment claim. *Id*. at 1374. While the subsequent delays meant treatment "may not have been as prompt as Gutierrez may have wished", the court was compelled to "examine the totality of an inmate's medical care when considering whether that care evidences deliberate indifference to his serious medical needs", and "occasional delays were simply isolated instances of neglect, which taken alone or collectively cannot support a finding of deliberate indifference." *Id*. at 1374-75.

Furthermore, jailhouse physicians "enjoy wide boundaries when making medical decisions in a custodial setting." *McClendon v. Lochard*, No. 19 CV 0373, 2021 U.S. Dist. LEXIS 139666, at *21 (N.D. Ill. July 27, 2021) (internal citations omitted). A detainee may not state a constitutional claim by "second-guessing a medical provider's professional judgment," nor is he entitled to receive "unqualified access to medical care." *Id*. at *20-21 (quoting *Smith v. Kapotas*, 2020 U.S. Dist. LEXIS 17529, at *5 (N.D. Ill. Feb. 4, 2020); *Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015)). "Mere disagreement with a doctor's medical judgment is not enough to establish that a course of medical treatment was objectively unreasonable." *McClendon*, 2021 U.S. Dist. LEXIS 139666, at *21.

Of particular note here, a physician enjoys wide boundaries when making medical decisions in a custodial setting, especially when treating pain. See *Williams v. Patton*, 761 F. App'x 593, 597 (7th Cir. 2019) (unpublished) (observing in a Fourteenth Amendment context that a plaintiff must show that medical treatment was such "a significant departure from professional norms" that it was objectively unreasonable); *Burton*, 805 F.3d at 785-86 (noting that the fact that a different doctor prescribed plaintiff's preferred treatment is merely evidence "that another doctor would have followed a different course of treatment," which, on its own, is

"insufficient to sustain a deliberate indifference claim"); *Holloway*, 700 F.3d at 1073, 1075

(holding that a doctor did not act with deliberate indifference when he prescribed non-narcotic

pain medications, and plaintiff presented no evidence that the doctor intended to cause plaintiff

pain or that prescribing non-narcotic medications would not alleviate plaintiff's pain).

As discussed below, each Defendant interacted with Plaintiff on a limited number of

occasions.  On each occasion, those Defendants examined Plaintiff, listened to his complaints,

and used their medical judgment to give their patient appropriate treatment following his

November 13, 2017 fall.  Many times, Plaintiff's version of events simply does not comport with

the contemporaneous medical records.  Regardless, even taking Plaintiff's version of events as

true, the Defendants exercised their medical judgement, acted reasonably, and provided Plaintiff

with care and a follow-up plan; Plaintiff just didn't like their plan, but has no evidence that it was

unreasonable.  Plaintiff also repeatedly failed to tell anyone his shoulder was hurting, and failed

to actively participate in his plan of care, for example by refusing to participate in physical

therapy after an initial session.  Moreover, looking at the totality of care Plaintiff received

following the November 13 fall, it cannot be argued that Plaintiff was ignored or mistreated even

if he still has shoulder pain, especially given the fact that he had preexisting arthritis and was

determined not to be a surgical candidate.  The fact is that Plaintiff simply is unsatisfied with the

care he received, but that does not make out a constitutional violation.

### a.  Dr. Yu acted Reasonably When Handling Plaintiff's Medical Case.

Plaintiff states that when he saw Dr. Yu in the ER on November 13, 2017, after the fall,

he told the Doctor he fell, and that he hit his head. (SOF ⁋5) Plaintiff also told Dr. Yu that his

neck and shoulder hurt as well. (SOF ⁋6) Dr. Yu only palpitated Plaintiff's neck and gave no

6

other physical examination. (SOF ℙ7) Plaintiff was sent off for x-rays by Dr. Yu. (SOF ℙ9)

Plaintiff does not recall Dr. Yu examining his left hip. (SOF ℙ8)

Plaintiff's allegation regarding the treatment received by Dr. Yu is not supported by the

medical evidence. *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) (quoting *Beyerbach*

*v. Sears*, 49 F.3d 1324, 1326 (8th Cir. 1995) (stating "an inmate who complains that delay in

medical treatment rose to a constitutional violation must place verifying medical evidence in the

record to establish the detrimental effect of delay in medical treatment to succeed.").  When

Plaintiff fell from the dispensary chair on November 13, 2017, Plaintiff complained of neck and

back pain and was taken to urgent care. (SOF ℙ4). Plaintiff presented with trauma to his neck,

head, and left hip. (SOF ℙ10). Dr. Yu did conduct a physical examination of Plaintiff, and found

that his neck had no swelling and a good range of motion; tenderness to the head, but no swelling

or abrasions; and his left hip had point tenderness, but no swelling, deformity, or external

rotation. (SOF ℙ11). Dr. Yu ordered x-rays of Plaintiff's neck which showed no acute fracture,

but did show mild degenerative changes in the lower lumbar spine. (SOF ℙ12). Dr. Yu prescribed

Plaintiff pain medication, and he was sent back to his division. (SOF ℙ13). The Plaintiff did not

complain of shoulder pain, and there is no record of a complaint about shoulder pain in Dr. Yu.'s

medical record. (SOF ℙ14).

Dr. Yu acted reasonably given the specific medical case that he was presented with his

single interaction with Plaintiff regarding the fall on November 13, 2017. Dr. Yu addressed

Plaintiff's left hip complaint, conducted a physical examination of the Plaintiff, ordered x-rays,

prescribed pain medication, and referred Plaintiff for follow-up care. Plaintiff's allegations are

woefully different than that of the medical record. But even Plaintiff's allegations and testimony

against Dr. Yu do not state a claim. Plaintiff claims that he fell on November 13, and was

immediately brought to Dr. Yu for emergency care. Per Plaintiff, Dr. Yu offered reasonable care for that fall, treating Plaintiff's neck and back, ordering x-rays, and referring Plaintiff for follow up care. Plaintiff offers no evidence that was an unreasonable course of treatment at the time of their interaction.

### b. Defendant PA Sims Acted Reasonably When Addressing Plaintiff's Case.

Plaintiff's claim against PA Sims is that on January 30, 2018, PA Sims saw Plaintiff regarding his neck, back, and shoulder. (*Dkt*. 1 at. ¶17). PA Sims informed Plaintiff of the need to attend physical therapy and said that he would refer Plaintiff to an orthopedic doctor as well. *Id*. Plaintiff then had one physical therapy appointment. *Id*. Plaintiff had to perform physical therapy in his cell, and the exercises gave him greater pain. *Id*.

Like Plaintiff's allegations against Dr. Yu, his allegations against Defendant Sims are not supported by the medical evidence. Plaintiff saw Defendant Sims once in the relevant time period regarding his alleged injury. On January 30, 2018, Plaintiff saw Defendant Sims regarding issues with his lower back. (SOF ¶21). Plaintiff made no mention of his left shoulder injury, nor did Plaintiff mention wanting to see an orthopedic surgeon regarding his left shoulder. *Id*.

Defendant Sims relies on patients to direct the examination, meaning that if they do not tell him about an issue they have, then he does not address it, as it could already be resolved. (SOF ¶24). Defendant Sims referred Plaintiff to physical therapy for his back pain. (SOF ¶25). As to that physical therapy, Plaintiff was evaluated on February 20, 2018, but Plaintiff again made no mention of any left shoulder injury. (SOF ¶26). Plaintiff attended this first PT evaluation but refused further physical therapy appointments from then on. (SOF ¶28).

As even Plaintiff admits, Defendant Sims only saw Plaintiff one time, and acted reasonably, which is also reflected in the medical records. Defendant Sims, who is a physician's

assistant and not a doctor, met with Plaintiff after his fall, evaluated Plaintiff's lower back, and created a plan with physical therapy to help address Plaintiff's issue. Plaintiff was referred for physical therapy, but Plaintiff refused to attend therapy after an initial sessions. Defendant PA Sims acted reasonably based on Plaintiff's presentation, but Plaintiff refused to participate in his plan of care.

### c. Physician's Assistant Trammell Acted Reasonably when Addressing Plaintiff's Case.

Physician's Assistant Glenn Trammell is entitled to summary judgment because he acted reasonably in his treatment and interactions with Plaintiff. Specifically, the record reflects that Glen Trammell adhered to treatment plans designed and directed by Drs. Yu and McCarthy. Additionally, the medical record reflects nothing problematic with respect to Plaintiff's first visit with Physician's Assistant Trammell on November 29, 2017, yet this is the focus of Plaintiff's claim against Mr. Trammel.

Under the prevailing law to establish deliberate indifference, a plaintiff must show that the defendant "*actually* knew of and disregarded a substantial risk of harm." *Petties* , 836 F.3d at 728. Here, plaintiff cannot make this showing. Further, obviousness of risks in the medical context can be obscured by information provided by the patient and the need for specialized expertise to understand the implications of a course of treatment. *Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016). Hence, a medical professional's treatment decision must be 'such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment.'" *Estate of Cole by Pardue v. Fromm*, 94 F.3d 254, 261–62 (7th Cir. 1996). Here, Physician's Assistant Glenn Trammell acted appropriately in light of the information conveyed to him by plaintiff and information contained in the medical records.

9

The medical records related to Plaintiff's November 29, 2017 visit includes a listing of information provided by Plaintiff during the November 29 visit. Based upon Plaintiff's complaints and an examination, P.A. Trammell ordered acetaminophen, and a lidocaine patch, which Plaintiff later sought to be re-prescribed Plaintiff had a subsequent medical visit with different medical providers on December 15.

No medical records or competent sworn medical testimony exist to support the notion that the actions taken by Physician's Assistant Trammell departed in any way from the standard of care for treatment for the Plaintiff. Plaintiff cannot point to any act by Glenn Trammell whatsoever that could even conceivably be construed as a "substantial departure" from standards of accepted professional judgment. Instead, Plaintiff attempts to lump together the actions of Glenn Trammell with other defendants to support his claim. The medical records showing a small number of visits with Physician's Assistant Trammell during 2018 merely reflect Plaintiff's complaints and actions taken based upon examination of plaintiff.

There is nothing in any medical record or any grievance to remotely suggest that Physician's Assistant Trammell took any adverse actions against Plaintiff, including actions relative to his left shoulder. Physician's Assistant Trammell is not named in any grievance in any negative way either. The dearth of evidence suggesting any wrongdoing by Glenn Trammell reflects the weakness of Plaintiff's claims against Physician's Assistant Trammell.

Finally, Physician's Assistant Trammell's October 9, 2018, implementation of Dr. McCarthy's October 2, 2018, treatment plan regarding plaintiff's left shoulder, which included x-rays, cannot be seriously called into question. (SOF ₱ 30, 32)

Peeling away extraneous facts regarding plaintiff's complaints regarding issues other than the left shoulder and treatment by medical doctors, exposes the paucity of plaintiff's claims against

Physician's Assistant Trammell. Defendant Trammell acted reasonably and summary judgment in his favor is appropriate.

### d. Dr. McCarthy Acted Reasonably When Addressing Plaintiff's Medical Case.

Plaintiff saw Dr. McCarthy on two occasions. Plaintiff alleges that he saw Dr. McCarthy on October 1, 2018, regarding his left shoulder pain. (*Dkt*. 1. at ℙ25.) Dr. McCarthy ordered x-rays. *Id*. Following the x-rays, Dr. McCarthy informed Plaintiff that he had bone spurs around his left shoulder, and she suggested a cortisone shot to assist in his pain. *Id*. Plaintiff felt that the cortisone shot was a temporary solution, and he requested an evaluation from an orthopedic physician. *Id*. Dr. McCarthy informed Plaintiff that he would not see an orthopedic physician until after the cortisone shot. *Id*. On December 3, 2018, Plaintiff saw Dr. McCarthy to review his MRI for his neck and back. (*Id*. at ℙ28). Plaintiff was told that he had a herniated disk in his neck and back, and would be referred to an orthopedic physician. *Id*. Plaintiff then requested an MRI be performed on his left shoulder. *Id*. He was told again that the cortisone shot was the next step prior to another examination. *Id*. Plaintiff again refused a cortisone shot. *Id*.

The medical records establish that Plaintiff saw Dr. McCarthy on October 2, 2018, for his left shoulder. (SOF ℙ35) Dr. McCarthy could not reproduce the feeling that Plaintiff said he was experiencing in his left shoulder. *Id*. She ordered an x-ray for his left shoulder and set up his next visit for an injection shot to his left shoulder. *Id*. Dr. McCarthy explained that the injection was both diagnostic and therapeutic, and that if it does not help, more advanced imaging may be needed. *Id*. Dr. McCarthy was following a step-by-step process to treat Plaintiff. (SOF ℙ36.) This would be to try one treatment before moving to another treatment. *Id*. On December 4, 2018, Dr. McCarthy saw Plaintiff again to review the MRI of his neck and back, as well as his left shoulder x-rays. (SOF ℙ40.) Dr. McCarthy found degenerative joint disease. She noted that the left

shoulder pain was characterized by limited range of motion and pain, but the severity of the pain was moderate. *Id*. Dr. McCarthy advised Plaintiff to receive an injection in his left shoulder which would help with the pain, as well as be diagnostic regarding his joint issue. *Id*. Plaintiff refused the injection, stating that instead he wanted follow-up with neurosurgeon on his MRI results. *Id*. Plaintiff did not request an injection/cortisone shot until August 20, 2019. (SOF ¶47)

Once again, according to Plaintiff's own version of events, Dr. McCarthy acted reasonably by exercising her medical judgment in treating Plaintiff's injuries from the fall, and Plaintiff offers no medical evidence that Dr. McCarthy was objectively unreasonable. Plaintiff underwent an examination with Dr. McCarthy, who could not recreate the pain that Plaintiff was feeling in his left shoulder, and she ordered x-rays of Plaintiff's shoulder. Dr. McCarthy was willing to refer Plaintiff to an orthopedic physician, but only after an injection of cortisone was tried first, a course of treatment Plaintiff offers no evidence to suggest was unreadable. Dr. McCarthy would have also ordered advanced imaging pending the results of the cortisone shots. When Plaintiff saw Dr. McCarthy again on December 4, 2018, she went over the MRI of his neck and back, and x-rays of his left shoulder. Plaintiff was again advised to have the cortisone shot for therapeutic and diagnostic help, meaning that not only would Plaintiff receive pain relief, but it would also help the doctors diagnose his left shoulder if he was having further issues. Plaintiff rejected that course of treatment.

As the medical records and depositions show, Dr. McCarthy acted reasonably in trying to diagnose and treat Plaintiff's pain. Plaintiff, however, refused Dr. McCarthy's advice because Plaintiff wanted a different course of treatment. That does not make out a claim for objectively unreasonable medical care. That is especially true where, indisputably, Dr. McCarthy ordered x-

12

rays, MRIs, and a cortisone shot.  The totality of care Plaintiff received, not only from Dr.

McCarthy but from all the Defendants, was not objectively unreasonable.

### f.    Defendant PA Barbara Daivs Acted Reasonably in Regard to Plaintiff's Medical Case.

Plaintiff first interacted with Barbara Davis on November 13, 2018. (SOF ⁋27.) Plaintiff

was then-awaiting the MRI of his neck and back, as was requested by Dr. McCarthy on his

October 2, 2018, visit. (SOF ⁋24.) Plaintiff requested Defendant Davis schedule an MRI of his

left shoulder. (SOF ⁋27.)  Physician's Assistant Davis did not grant his request, but she did

message Dr. McCarthy regarding the potentiality of an MRI of Plaintiff's left shoulder. (SOF

⁋28.) Dr. McCarthy messaged back that she would not order an MRI of Plaintiff's shoulder at

this time, as it showed significant osteoarthritis in his joint, which may account for his pain. *Id*.

Dr. McCarthy also stated that Plaintiff's left shoulder pain could be addressed with a simple

injection. *Id*.

Defendant Davis saw Plaintiff again on December 12, 2018, where he requested different

pain medication and asked to see neurosurgery regarding his pain. (SOF ⁋42) Plaintiff was seen

by Neurosurgery, where his spine showed arthritis, and he was told that there was no indication

of a need for neurosurgical intervention. (SOF ⁋43)

Plaintiff saw Defendant Davis on January 29, 2019, regarding his neck, back, and left

shoulder. (SOF ⁋44). He was reminded that he rejected the injections offered by Dr. McCarthy,

he was not a candidate for neurosurgery, and he had been advised to attend physical therapy. *Id*.

Lastly, Defendant Davis saw Plaintiff again on July 24, 2019, when he asked for his pain

medication to be altered, and it was. (SOF⁋46).

In short Defendant Davis met with Plaintiff several times regarding alleged injuries

stemming from his November 13 fall.   Each time she acted reasonably by following up with Dr.

McCarthy about further MRIs, counseling Plaintiff about physical therapy, cortisone shots, and Plaintiff's plan of care, and responding to Plaintiff's request for adjusted pain medication. That was all reasonable.

### 2. Totality of Care.

The totality of care given to Plaintiff regarding his fall on November 13, 2017, was reasonable. When Plaintiff first fell, he complained of neck and back injuries. (SOF ¶ 4) When in the ER, he received an examination by Dr. Yu, who added Plaintiff's left hip to the list of injuries he sustained. (SOF ¶ 5) Dr. Yu ordered x-rays of the neck and back, as well as prescribe pain medication to Plaintiff. (SOF ¶¶ 5, 8) Those x-rays showed no acute fracture, but mild degenerative changes in the lower lumbar spine. (SOF ¶ 7) When Plaintiff complained of left shoulder injury a day later, he was seen and given a range of exercises to help. (SOF ¶¶ 10, 11, 12) On November 29, Plaintiff stated that his left hip, neck, back, and shoulder were decreasing in pain. (SOF ¶ 13) On January 30, 2018, Plaintiff did not mention issues with his left shoulder, and Plaintiff was referred to physical therapy for back pain. (SOF ¶¶ 15, 19) On February 20, Plaintiff was evaluated for physical therapy, but did not mention left shoulder pain. (SOF ¶ 20). Plaintiff refused physical therapy treatment after attending a single session, despite being repeatedly advised of its benefit for him. (SOF ¶¶ 22, 28, 37, 38, 40) On May 29, Plaintiff advised of decreasing neck and back pain with no mention of shoulder issues and was seen for a neck and back MRI on July 25, 2018. (SOF ¶¶ 26, 28) Later, on October 2, Dr. McCarthy ordered x-rays of Plaintiff's left shoulder and discussed plaintiff's treatment plan. (SOF ¶ 29) Once again on December 4, Plaintiff refused to follow his treatment plan and rejected cortisone injections offered by Dr. McCarthy. (SOF ¶ 35) On January 1, 2019, Plaintiff was prescribed physical therapy for his neck and back and was advised that he was not a surgical candidate. (SOF ¶ 37) Plaintiff's pain medication was changed

during May and July of 2019. (SOF ¶¶ 39, 40) Ultimately, Plaintiff received medical care from multiple Doctors, PAs, and departments to address his November 13, 2017, fall. Defendants acted reasonably in their care for Plaintiff's injury despite Plaintiff refusing medical treatment and not following his medical treatment plan.

## CONCLUSION

Defendants are entitled to summary judgment regarding Count I of Plaintiff's Complaint. As a matter of law, even taking Plaintiff's version of events as true, Defendants were not objectively unreasonable to Plaintiff's medical needs, and at all times acted reasonably to address Plaintiff's medical needs. Plaintiff refused medical advice and wished to dictate his own course of treatment while incarcerated.

WHEREFORE, for the foregoing reasons, Defendants Dr. Yu, Physician Assistant Sims, Physician Assistant Davis, Physician Assistant Trammell, and Dr. McCarthy, by and through their respective attorneys, respectfully request entry of an order as follows:

(1) Defendants' Motion for Summary Judgment is granted;
(2) Summary Judgment is granted in favor of Defendant Dr. Yu regarding Count I;
(3) Summary Judgment is granted in favor of Defendant Physician Assistant Sims regarding Count I;
(4) Summary Judgment is granted in favor of Defendant Physician Assistant Davis regarding Count I;
(5) Summary Judgment is granted in favor of Defendant Physician Assistant Trammell regarding Count I; and
(6) Summary Judgment is granted in favor of Defendant Dr. McCarthy regarding Count I.


Respectfully submitted,
Kimberly M. Foxx
State's Attorney of Cook County
For Defendants Dr. Yu, Dr. McCarthy, PA Sims, and PA Davis only

By:    /s/ Alexander Preber
Alexander Preber
Assistant State's Attorney

15

Civil Actions Bureau
Richard J. Daley Center, Room 520
Chicago, IL 60602
(312) 603-3141
Alexander.Preber@Cookcountyil.gov


Jason E. DeVore
For Defendant PA Trammell only

By:     */s/ Jason E. DeVore*
        **DeVore Radunsky LLC**
        Jason E. DeVore
        Zachary G. Stillman
        230 W. Monroe Street, Ste. 230
        Chicago, Illinois 60606
        (312) 300-4479
        jdevore@devoreradunsky.com
        zstillman@devoreradunsky.com


## CERTIFICATE OF SERVICE

I, Alexander Preber, hereby certify that in accordance with Fed. R. Civ P. 5, LR, 5.5 and the General Order on Electronic Case Filing (ECF), **Defendants' Motion for Summary Judgment** was served pursuant to the District Court's ECF system on October 13, 2023.

*/s/ Alexander Preber*
Alexander Preber

16