IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| Shane Edward Limbacher, | ) |
| | ) |
| Plaintiff, | ) Case No. 19-cv-07509 |
| | ) |
| vs. | ) Honorable District Court Judge |
| | ) John J. Tharp Jr. |
| Sheriff Thomas J. Dart, et. al., | ) |
| | ) Honorable Magistrate Judge |
| Defendants. | ) Jeffery Cole |
| | ) |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S LOCAL RULE 56.1(A)(3)
STATEMENT OF UNDISPUTED MATERIAL FACTS AND SUPPORTING
EXHIBITS**

Now comes the Plaintiff, Shane Edward Limbacher, and pursuant to Rule 56.1(a)(3) of the Rules of the Northern District of Illinois, files this response to Defendants' statement of facts in support of their motion for summary judgement. In support thereof, Plaintiff state as follows:

**I.    Lists of Exhibits.**

1. Plaintiff's Booking Card.
2. Bed Assignments.
3. 10.25.2017 Health Service Request Form ("HSRF") regarding arthritis.
4. 11.13.2017 Medical Document.
5. Dr. Yu ER Visit on 11.13.2017.
6. Dr. Yu. Deposition.
7. 11.14.17 Plaintiff's HSRF.
8. 11.15.17 Medical Visit.
9. 11.29.17 Medical visit with Defendant Trammell.
10. 1.30.2017 Medical visit with Defendant Sims.
11. Defendant Sims Deposition.
12. Plaintiff's Physical Therapy Refusals.
13. 11.30.17 to 1.30.18 Plaintiff's HSRF.
14. 10.2.18 McCarthy Visit.
15. Dr. McCarthy Deposition.
16. 10.9.18 Trammell Visit.
17. 11.13.2018 Barabara Davis Visit.
18. Correspondence between Davis and McCarthy 11.13.18.
19. 12.4.18 Visit with Dr. McCarthy.
20. 7.25.18 Neurosurgery.

      21.     12.12.18 Davis Visit.
      22.     1.9.19 Neurosurgery Visit.
      23.     1.29.19 Davis Visit.
      24.     5.29.19 visit.
      25.     7.24.19 Davis Visit.
      26.     8.20.19 Injection Request.
      27.     3.2.18 & 5.7.18 Trammell Visits.
      28.     5.29.2018 Trammell Visit.
      29.     Shane Limbacher's Deposition.
      A.      Dr. Herrington Report.
      B.      Dr. Ko Report.

**II.**    **Description of the Parties.**

      1.      Plaintiff, Shane Limbacher, ("Plaintiff"), On May 19, 2017, and all relevant times herein, was a pretrial detainee at the Cook County Department of Corrections. Plaintiff is currently released from the Cook County Department of Corrections ("CCDOC").

      **Response:**  Admitted.

      2.      On November 13, 2017, and at all relevant times herein, Defendant, Dr. Yu, was employed by Cook County Health and Hospital Systems ("CCHHS").

      **Response:**  Admitted.

      3.      On November 13, 2017, and at all relevant times herein, Defendant, Physician Assistant Sims, was employed by CCHHS.

      **Response:**  Admitted.

      4.      On November 13, 2017, and at all relevant times herein, Defendant, Physician Assistant Davis, was employed by CCHHS.

      **Response:**  Admitted.

      5.      On November 13, 2017, and at all relevant times herein, Defendant, Dr. McCarthy, was employed by CCHHS.

      **Response:**  Admitted.

**III.**    **Facts supporting venue and jurisdiction in this court.**

      1.      Plaintiff's lawsuit is brought pursuant to the Civil Rights Act, 42 U.S.C. §1983, and the Fourteenth Amendment of the Constitution of the United States.

      **Response:**  Admitted.

2. Accordingly, the jurisdiction of this Court is based on federal question, 28 U.S.C. §1331.

**Response:** Admitted.

3. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because all the events giving rise to Plaintiff's claim occurred in this district.

**Response:** Admitted.

## IV. Undisputed Material Facts

1. Plaintiff was booked at Cook County Department of Corrections ("CCDOC") on May 19, 2017. (Ex. 1)

**Response:** Admitted.

2. Plaintiff was housed in CCDOC from May 19, 1017, to the filing of this complaint. (Ex. 2)

**Response:** Admitted.

3. On October 25, 2017, Plaintiff met with a nurse regarding a Health Service Request Form ("HSRF") that he submitted on October 24, 2017, regarding pain due to arthritis. When seen on October 25, 2017, Plaintiff stated to the nurse that: "arthritis all my life on my hands and ankles and all of my joints." (Ex. 3. Pg. 1, 3)

**Response:** Admitted except that the quote is on page 5 of Ex. 3.

4. On November 13, 2017, Plaintiff fell off the chair at the dispensary. There was no skin tear to scalp, and Plaintiff complained of neck and back pain. Plaintiff was taken to urgent care. (Ex. 4)

**Response:** Admitted in part and disputed in part as incomplete. Plaintiff complained of neck, back, hip, and shoulder pain. (Ex. 29 at 27:8-13, 29:17-30:13; 35:19-22, 36:19-37:5.)

5. Plaintiff states that he met with Dr. Yu on November 13, 2017, where he told the Doctor that he hit his head. (Ex. 29. at pg. 35, 5-12)

**Response:** Admitted in part and disputed in part as incomplete. Plaintiff complained of neck, back, hip, and shoulder pain. (Ex. 29, at 35:19-22, 36:19-37:5.)

6. Plaintiff states that he told Dr. Yu about his neck and shoulder hurting. (Id. at pg. 35, 19-22)

**Response:** Admitted.

7. That Dr. Yu only examined his neck, by palpitating the area. No other physical examination was done. (Id. at pg. 36, 2-9)

3

**Response:** Admitted.

8. Plaintiff further states that he could not recall his left hip being examined. (Id. at pg. 38, 5-18)

**Response:** Admitted.

9. Plaintiff was sent for x-rays and given pain medication. (Ex. 29, at pg. 37, 1016)

**Response:** Admitted in part and denied in part as ambiguous. Plaintiff was sent for an x-ray of his neck but not his shoulder. The correct citations should be to Ex. 29, at 36:19–24, 37:1–16.

10. Plaintiff was examined by Defendant Dr. Yu at urgent care. Plaintiff presented with trauma to his left neck, head, and left hip from his fall. (Ex. 5. At pg. 1)

**Response:** Admitted in part and denied in part as ambiguous and incomplete. Plaintiff presented with trauma to his left neck, head, left hip, and shoulder from his fall. Dr. Yu did not examine Plaintiff's left shoulder. (Ex. 29, at 35:19–22, 36:19–37:5.)

11. Upon physical examination, Dr. Yu found that: the neck had no swelling and good range of motion; tenderness to the head, but no swelling or abrasion; and left hip had point tenderness, but no swelling, deformity, or external rotation. Dr. Yu requested an x-ray for Plaintiff's neck and back pain. (Ex. 5. Pg. 2)

**Response:** Admitted in part. Dr. Yu's November 13, 2017 note indicated tenderness to neck, not head. (Ex. 5, at 2.)

12. X-rays of Plaintiff's neck showed, "no acute fracture or subluxation. Mild degenerative changes in the lower lumbar spine." (Ex. 5. Pg. 3).

**Response:** Admitted.

13. Pain medication was prescribed to the Plaintiff, and he was sent back to his division. (Ex. 5 pg. 5)

**Response:** Admitted.

14. Dr. Yu does not recall Plaintiff complaining of shoulder pain. If Plaintiff did complain of shoulder pain, he would have placed that complaint in the medical record. (Ex. 6. pg. 45, 15-24, pg. 46, 1-9)

**Response:** Disputed. Dr. Yu testified that he had no memory of his examination of Plaintiff. (Ex. 6, at 45:11–23.) Dr. Yu speculated that he "[was] sure [Mr. Limbacher] didn't complain about his shoulder pain to [him]" because the report did not reflect a complaint. (Ex. 6, at 45:19–24, 45:1–9). Mr. Limbacher briefly met with Dr. Yu before being sent for x-rays of his spine. Ex. 4 at 4 (Radiology order 12:52). Mr. Limbacher told Dr. Yu that he hurt his head, neck, and shoulder. (Ex. 29, at 35:5-22). Dr. Yu examined Mr. Limbacher's neck but did not examine

4

his shoulder. (Ex. 29, at 35:23-36:18). When Mr. Limbacher returned from the x-rays, he informed Dr. Yu that he still needed his shoulder looked at. Dr. Yu said, "I'm done with him," and made a dismissive gesture with his hand before sending Mr. Limbacher away. (Ex. 29, at 36:19-37:5).

15. On November 14, 2017, Plaintiff filled out a HSRF stating that his lower back, neck, left shoulder, left hip, and left knee are in severe pain, saying it was from the fall on November 13, 2017. (Ex. 7)

**Response:** Admitted. Plaintiff also wrote "I do not feel that all of my injuries were treated and looked at properley (sic). I feel that my injuries have been carelessly dismissed." (Ex. 7.)

16. Plaintiff was seen on November 15, 2017, partially regarding his left shoulder. (Ex. 8 pg. 3).

**Response:** Admitted.

17. Plaintiff was counseled on range of motion exercises, and a re-evaluation was set for 2 weeks. (Ex. 8 pg. 4)

**Response:** Admitted.

18. On November 29, 2017, Plaintiff was seen by Defendant Trammell. Plaintiff's left hip, shoulder, and lower back pain continued, but were decreasing in pain. (Ex. 9 pg. 2)

**Response:** Admitted in part and disputed in part. Plaintiff only reported decreasing pain in his left hip; the pain in his left shoulder was not improving. (Ex. 29, at 45:14, 46:1–9.)

19. Defendant Trammell ordered Plaintiff to continue present management, as the clinical status of Plaintiff was improving regarding his left hip, left shoulder, and lower back. *(Id.* at pg. 7) Plaintiff was not referred to orthopedics.

**Response:** Disputed. Defendant Trammel communicated to Plaintiff he would be referred to an orthopedic doctor. (Ex. 29, at 46:10-15). Further, Plaintiff only reported decreasing pain in his left hip and that the pain in his left shoulder was not improving. (*Id.* at 45:14, 46:1–9.)

20. Between November 29, 2017, and to January 30, 2018, Plaintiff filed six HSRFs regarding pain in his back and neck, and three of those Forms mentioned his left shoulder. (Ex. 13.)

**Response:** Admitted.

21. On January 30, 2018, Plaintiff was seen by Defendant Sims for issues with his lower back resulting from the November 13, 2017, fall. Plaintiff made no mention of his left shoulder injury to Defendant Sims. (Ex. 9. / Ex. 10 at pg. 77, 12-21).

**Response:** Disputed. Plaintiff discussed his shoulder injury with Defendant Sims during the January 30, 2018 appointment. (Ex. 29, at 49:6–8.)

5

22. Defendant Sims does not recall Plaintiff mentioning wanting to see an orthopedic surgeon regarding his left shoulder. (Ex. 10, at pg. 79, 12-15)

**Response:** Disputed. Mr. Limbacher discussed his left shoulder with P.A. Sims. P.A. Sims expressed surprise that Mr. Limbacher had not been referred to orthopedics given the amount of time that had passed since the accident. (Ex. 29, at 49:6–18.)

23. Defendants Sims' medical record with Plaintiff does not show him referring or talking with Plaintiff about an orthopedic referral. (Ex. 9)

**Response:** Admitted. (Ex. 10.)

24. As Defendant Sims relies on the patient to direct the examination, as prior pain could already be resolved. (Ex. 10. at pg. 82-83, 7-1)

**Response:** Plaintiff admits that Defendant Sims testified as such but disputes that providers can rely solely on patients to direct an examination. (Ex. 11, at 82:7–24, 83:1.)

25. Defendant Sims referred Plaintiff to physical therapy for his back pain. (Ex. 10. at pg. 81, 1-11)

**Response:** Admitted. (Ex. 10, at 81:1–11.)

26. On February 20, 2018, Plaintiff had his initial evaluation for physical therapy. Plaintiff made no mention of a left shoulder injury during the evaluation. (Ex. 11 pg. 1-5)

**Response:** Disputed. Mr. Limbacher attended a physical therapy session and was given a sheet of exercises to do in his cell. (Ex. 29, at 50:24-52:5.)

27. On March 2, 2018, Plaintiff was seen by Defendant Trammell. This was a follow-up visit for a lateral neck abscess. Plaintiff did not mention his neck, back, or left shoulder injury. (Ex. 27. At pg. 1, 3)

**Response:** Disputed. Plaintiff discussed his left shoulder injury, and his attendant request for an orthopedic appointment with Defendant Trammel during the March 2, 2018 visit. (Ex. 29, at 53:13–24, 54:1–24, 55:1–10.)

28. Plaintiff refused further physical therapy appointments on March 21, 2018, April 5, 2018, and May 1, 2018. (Ex. 11 at. pg. 6-8)

**Response:** Mr. Limbacher was unable to attend his physical therapy appointments on March 21, 2018, April 5, 2018, and May 1, 2018.

29. On May 7, 2018, Plaintiff met with Defendant Trammell. Plaintiff discussed his neck and lower back pain, mentioning that he had little relief with physical therapy. (Ex. 27. at pg.5).

6

**Response:** Admitted in part and disputed in part as incomplete. On May 7, 2018, Plaintiff also spoke with Defendant Trammel about his left shoulder and mentioned increasing pain. (Ex. 29, at 62:18–24, 63:1–5.)

30. Plaintiff is referred to neurosurgery for his neck and back pain. *(Id.* at pg. 10)

**Response:** Admitted.

31. Plaintiff does not mention left shoulder pain. *(Id.* at pg. 5-11)

**Response:** Disputed. Plaintiff and Defendant Trammel discussed his left shoulder pain and Plaintiff mentioned his shoulder pain continued to increase. (Ex. 29, at 62:18–24, 63:1–5.)

32. On May 29, 2018, Plaintiff meets with Defendant Trammell on his scheduled follow-up visit. Plaintiff's neck and lower back are decreasing in pain, and he has relief with current prescriptions. (Ex. 28, at pg.1)

**Response:** Admitted in part and disputed in part as incomplete. Defendant Trammel's May 29, 2018 note states Plaintiff's neck and lower back pain were decreasing and Plaintiff experienced relief of his neck and lower back pain with current prescriptions. (Ex. 28, at p. 1). Plaintiff discussed his shoulder pain with Defendant Trammel during the May 29, 2018 visit. (Ex. 28, at p. 1 (noting "CHronic (sic) Neck/BUE [Bilateral Upper Extremities]/Lower Back Pain").)

33. Plaintiff is to continue treatment, as his status is improving, and he is to keep his neurology appointment. (Ex. 28 at pg. 5) Plaintiff's left shoulder is not mentioned.

**Response:** Admitted in part and disputed in part. Defendant Trammel's May 29, 2018 note states Plaintiff's status was improving. (Ex. 28, at 1-6.) Plaintiff discussed his shoulder pain with Defendant Trammel during the May 29, 2018 visit. (Ex. 28, at p. 1 (noting "CHronic (sic) Neck/BUE [Bilateral Upper Extremities]/Lower Back Pain").)

34. On July 25, 2018, Plaintiff is seen by neurosurgery to discuss the MM results of his neck and back. Further MRI's of his neck and back are ordered. Plaintiff is to consider physical therapy and is referred to the pain clinic. (Ex. 20)

**Response:** Admitted in part. Plaintiff and the neurologist also discussed Plaintiff's left shoulder pain and the neurologist informed him there were no neurological concerns implicated by his shoulder. (Ex. 29, at 85:21–24, 86, 1–11.)

35. On October 2, 2018, Plaintiff was seen by Defendant Dr. McCarthy to address his left shoulder pain. During the exam, Dr. McCarthy could not reproduce the feeling that Plaintiff was experiencing in his shoulder. She ordered an x-ray of Plaintiff's left shoulder and scheduled a follow-up visit for November 6, 2018, for Plaintiff to receive an injection. The injection is both diagnostic and therapeutic, and if no improvement, Plaintiff may need more advanced imaging. (Ex. 14. at pg. 4).

7

**Response:** Admitted to the extent Dr. McCarthy testified she could not reproduce the feeling in his shoulder, ordered x-rays, and scheduled an injection. However, disputed to the extent the injection was therapeutic and diagnostic, given the length of delay between Plaintiff's injury November 13, 2017 to October 2, 2018. (Ex. A, at 18.) A patient presenting with a traumatic shoulder injury that has not improved after three to six months of conservative treatment should be referred to an orthopedic specialist. (Ex. B, at 3.)

36. Dr. McCarthy was practicing conservative medicine, meaning that there is a step-by-step process to treat a patient. If plan A does not work, then plan B; if B is not working, then plan C will be tired. (Ex. 15. Pg. 120-121, 9-8)

**Response:** Disputed. Dr. McCarthy's offer of a cortisone shot on October 2, 2018, for Plaintiff's November 13, 2017, injury was an exercise of substandard care, not conservative medicine. (Ex. A, at 18.) A patient presenting with a traumatic shoulder injury that has not improved after three to six months should be referred to an orthopedic specialist. (Ex. B, at 3.)

37. On October 9, 2018, Plaintiff was seen by Defendant Trammell. Defendant Trammell referred to and implemented the same plan that was created by Dr. McCarthy 7 days prior for the treatment of Plaintiff's left shoulder. (Ex. 16 at. pg. 2)

**Response:** Admitted in part and disputed in part. Defendant Trammell referenced Defendant McCarthy's Impression and Plan. (Ex. 16, at 2.) However, disputed to the extent the injection was therapeutic and diagnostic, given the length of delay between Plaintiff's injury November 13, 2017 to October 2, 2018. (Ex. A, p. 18.) A patient presenting with a traumatic shoulder injury that has not improved after three to six months should be referred to an orthopedic specialist. (Ex. B, at 3.)

38. On November 13, 2018, Plaintiff was seen by Defendant Barabara Davis regarding his left shoulder. She notes that Plaintiff missed the November 6, 2018, appointment with Dr. McCarthy. Plaintiff requested that he have an MRI of his left shoulder, to be done in conjunction with his cervical and L-S spine MRI, to reduce multiple visits to Stroger Hospital. (Ex. 17. At pg.1). Plaintiff was not referred to orthopedics. (Ex. 17)

**Response:** Admitted.

39. That same day, Defendant Davis messaged Dr. McCarthy regarding Plaintiff's request for an MRI on his left shoulder. Dr. McCarthy messaged back on November 20, 2018, that she would not do an MRI on Plaintiff's shoulder at this time, and that Plaintiff's significant osteoarthritis in his joint may account for his pain, this shoulder pain could be addressed with a simple injection. (Ex. 18)

**Response:** Admitted to the extent Dr. McCarthy's November 20, 2018 message rejected Plaintiff's request for an MRI on his shoulder. Disputed that Defendant McCarthy believed Plaintiff's shoulder injury could be addressed with a cortisone injunction. Defendant McCarthy testified that a cortisone injection would only provide temporary relief, at best, and would not a resolve Plaintiff's shoulder injury. (Ex. 15, at 66:12–19.)

40. On December 4, 2018, Plaintiff met with Dr. McCarthy, who discussed Left shoulder x-rays, as well as the MRI findings of Plaintiff's cervical and lumbar spine, which found degenerative joint disease ("DJD"/arthritis). She noted that the shoulder problem is characterized by pain and limited range of motion, and the severity of the pain is moderate. (Ex. 19 at pg. 1.)

**Response:** Admitted in part and denied in part as incomplete. Dr. McCarthy also indicated "[t]he context of the shoulder problem: occurred after trauma." (Ex. 19, at 1.) The report also found "left shoulder 'catching and cracking' between 80 to 100 degrees." (*Id.* at 3.)

41. Dr. McCarthy advised that Plaintiff receive the injection to his left shoulder, as it would help with the pain and also could be diagnostic regarding his joint issue. Plaintiff refused the injection, stating that he feels pain coming from his neck and wants a follow up with neurosurgeon on his MR' results, that he is moving his shoulder, and the pain feels more radiating down from his neck. Plaintiff was informed to follow-up if he changes his mind on the injections. *(Id.* at p.4)

**Response:** Admitted to the extent Defendant McCarthy's December 4, 2018 note reflects her belief the injection both would help with Plaintiff's pain and would be diagnostic. Further admitted to the extent Dr. McCarthy advised she was requiring Plaintiff to receive a shot before she would refer him to an orthopedic doctor. (Ex. 29, at 77:16–24, 78:1–8.) However, disputed to the extent the injection was therapeutic and diagnostic, given the length of delay between Plaintiff's injury November 13, 2017 to October 2, 2018. (Ex. A, at 18.) A patient presenting with a traumatic shoulder injury that has not improved after three to six months should be referred to an orthopedic specialist. (Ex. B, at 3.)

42. On December 12, 2018, Plaintiff is seen by Defendant Davis. Plaintiff requested stronger pain medication. Plaintiff also stated that he wishes to see neurosurgery again, and something feels wrong. (Ex. 21)

**Response:** Admitted.

43. On January 1, 2019, Plaintiff is seen again by neurosurgery for his neck and back. The results of the MRI were discussed with Plaintiff. The MRI of L-spine showed arthritis. Plaintiff was told to consider referral to physical therapy again and referred to the pain clinic. Plaintiff was told that there is no indication of neurosurgical intervention at this time. (Ex. 22. Pg.1)

**Response:** Admitted in part. Plaintiff's date of care was January 9, 2019. (Ex. 22, at 1.)

44. On January 29, 2019, Plaintiff is seen again by Defendant Davis to follow-up on his neck, back, and left shoulder complaints. Plaintiff is reminded again that he has rejected the injections offered by Dr. McCarthy for his shoulder. Plaintiff is also reminded that he was informed by neurosurgery on January 1, 2019, that he is not a candidate for surgery, and that he has been recommended for physical therapy. Plaintiff's pain medication was continued. (Ex. 23. at pg.1)

9

**Response:** Admitted in part and denied in part as ambiguous and incomplete. (Ex. 23, at 4.) Plaintiff was informed by neurosurgery that he was not a candidate for spinal surgery. (Ex. 29, at 85:20–24, 86:1–11.) Plaintiff was and is a candidate for shoulder surgery. (Ex. B, at 2.)

45. On May 29, 2019, Plaintiff meets with a physician assistant regarding his neck, back, and left shoulder. Plaintiff asked to try a pain medication different from diclofenac. The physician assistant agrees to have Plaintiff on a trial of naproxen. (Ex. 24).

**Response:** Admitted.

46. On July 24, 2019, Plaintiff is seen again for a follow-up visit by Defendant Davis for his neck, back, and left shoulder. Plaintiff would like to return to pain the medication diclofenac, because he thought the trial of naproxen was ineffective. Plaintiff wishes out loud that if Cermak had acupuncture, it would be better. Plaintiff was referred to physical therapy but refused to go. Plaintiff is not a candidate for surgery and admits that he didn't want it anyway. Plaintiff was prescribed diclofenac as a pain medication. (Ex. 25)

**Response:** Admitted in part and disputed in part as ambiguous and incomplete. Plaintiff was informed by neurosurgery that he was not a candidate for spinal surgery. (Ex. 29, at 85:21–24, 86:1–11.) Plaintiff was and is a candidate for shoulder surgery. (Ex. B, at 2.) As of July 24, 2019, Plaintiff had not seen an orthopedic doctor and had not been recommended for shoulder surgery. (Ex. 25, at 1.) Plaintiff did not refuse to go to physical therapy and attempted to perform the exercises recommended by the physical therapist. The exercises caused Plaintiff increased pain. (Ex. 29, at 51:20–24, 52:1–5.)

47. On August 20, 2019, Plaintiff requests the injection that Dr. McCarthy previously offered him. (Ex. 26)

**Response:** Admitted.

48. On November 14, 2019, Plaintiff filed this lawsuit (Dkt. #1)

**Response:** Admitted.

49. Plaintiff states in his Deposition that everything in his complaint is true and accurate. (Ex. 29. at pg. 22, 10-13)

**Response:** Admitted.

Dated: November 27, 2023  Respectfully submitted,

/s/ *Randall A. Hack*
Counsel for Plaintiff

Randall A. Hack (6187595)
Brian I. Hays (6256068)
Locke Lord LLP
111 South Wacker Drive

Chicago, IL 60606<br>
(312) 443-0676<br>
rhack@lockelord.com<br>
bhays@lockelord.com

## CERTIFICATE OF SERVICE

  I, Randall A. Hack, hereby certify that on November 27, 2023, I electronically filed the foregoing with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, using the Court's CM/ECF system, which will automatically send notification of this filing to all counsel of record.

/s/ <i>Randall A. Hack</i>