**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Shane Edward Limbacher, | ) | |
| | ) | 19 CV 7509 |
| Plaintiff, | ) | |
| | ) | Honorable John J. Tharp |
| vs. | ) | |
| | ) | Jury Trial Demanded |
| Sheriff Thomas Dart, et al. | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' RESPONSE TO PLAINTIFF'S LOCAL RULE 56.1(b)(3) STATEMENT**
**OF ADDITIONAL MATERIAL FACTS AND SUPPORTING EXHIBITS**

NOW COME Defendants Dr. Yu, Physician Assistant Sims, Physician Assistant Davis, and Dr. McCarthy, by and through their attorney, Assistant State's Attorney Alexander Preber, and Defendant Physician Assistant Glenn Trammell, by and through his attorneys, Troy S. Radunsky and Zachary G. Stillman, of DeVore Radunsky LLC, and pursuant to LR 56.1(b)(3)(C) of the Northern District of Illinois, submit the following response to Plaintiff's LR 56.1(b)(3) Statement of Additional Material Facts. (ECF No. 121.) In support thereof, Defendants state as follows:

**I.    List of Exhibits**

    A.    Health Services Request Form (Nov. 17, 2017)
    B.    Health Services Request Form (Dec. 14, 2017)
    C.    Health Services Request Form (Jan. 8, 2018)
    D.    Health Services Request Form (Jan. 18, 2018)
    E.    Health Services Request Form (Jan. 26, 2018)
    F.    Outpatient PT-OT-CHS Report (Feb. 20, 2018)
    G.    Health Services Request Form (Feb. 21, 2018)
    H.    Outpt Medical CHS (Mar. 2, 2018)
    I.    Outpt Medical CHS (May 7, 2018)
    J.    Health Services Request Form (June 19, 2018)
    K.    Health Services Request Form (July 7, 2018)
    L.    Health Services Request Form (July 13, 2018)
    M.    Health Services Request Form (Aug. 3, 2018)
    N.    Health Services Request Form (Sept. 28, 2018)

O.   Evaluation of Shoulder Complaints (UpToDate) (accessed on Nov. 20, 2022)
P.   Neurosurgery Outpatient Report (Limbacher11996-12019)
Q.   Outpatient Progress Note (June 30, 2020)
R.   Expert Report of Dr. Sebastian Ko
S.   Expert Report of Dr. Ryan Herrington
T.   ER CHS Record (Nov. 13, 2017)
U.   Dr. Yu Deposition
V.   Health Services Request Form (Nov. 14, 2017)
W.   Outpatient Medical CHS Record (Nov. 29, 2017)
X.   Outpatient Medical CHS Report (Jan. 30, 2018)
Y.   Defendant Sims Deposition
Z.   Dr. McCarthy Deposition
AA.  Correspondence between Davis and McCarthy (Dec. 4, 2018)
BB.  Shane Limbacher Deposition
CC.  Health Services Request Form (Nov. 22, 2017)
DD.  Medical visit with Defendant Sims (Jan. 10, 2017)
EE.  Medical visit with Defendant Trammel (May 29, 2018)
FF.  Defendant Davis Deposition
GG.  Medical visit with Defendant Davis (Nov. 13, 2018)
HH.  Medical visit with Defendant Davis (Dec. 12, 2018)
II.  Medical visit with Defendant Davis (Jan. 29, 2019)
JJ.  Health Services Request Form (Nov. 22, 2017)
KK.  McCarthy Medical Report (Dec. 4, 2018)

## II.   Additional Material Facts

1.     Plaintiff was incarcerated as a pretrial detainee at the Cook County Department of

Corrections. (Defendants' Statement of Undisputed Material Facts ("DSOF"),¶ 1.)

**Response:** Admitted.

2.     During a medical appointment on November 13, 2017, Mr. Limbacher took a hard

fall in which he dislocated his shoulder and tore his labrum. (DSOF ¶ 4; Ex. S at 1.)

**Response:** Admitted.

3.     The fall resulted in immediate, severe pain and distress. While lying on the floor, Mr.

Limbacher kept complaining, "My shoulder. My shoulder." (Ex. BB, at 27:8–13, 29:17–30:6.)

**Response:** Disputed. Medical records from November 13, 2017, do not mention a shoulder

injury. (Dkt. #115, Ex. 4)

4.      The nurse called for emergency help. Mr. Limbacher was strapped to a gurney and taken to Urgent Care. (DSOF ¶ 4.)

**Response:** Admitted.

5.      Mr. Limbacher reported to the paramedics that his shoulder was hurting. (Ex. BB, at 34:15–20.)

**Response:** Disputed. Disputed. Medical records from November 13, 2017, do not mention a shoulder injury. (Dkt. #115, Ex. 4)

**a.      Urgent Care Visit**

6.      When Mr. Limbacher arrived at Urgent Care, his vitals were taken by Wendell Smith. Ex. T, at 1–2 (Physical Examination VS/Measurements, 11/13/2017 12:38)).

**Response:** Admitted.

7.      Mr. Limbacher briefly met with Dr. Yu before being sent for x-rays of his spine. (Ex. T, at 4 (Radiology order 12:52).) Mr. Limbacher told Dr. Yu that he hurt his head, neck, and shoulder. (Ex. BB, at 35:5–22.) Dr. Yu examined Mr. Limbacher's neck but did not examine his shoulder. (Ex. BB, at 35:23–36:18.)

**Response:** Admitted in part that Plaintiff briefly met with Dr. Yu before being sent for x-rays of his spine and disputed as to the remaining assertions. Dr. Yu did not report that Plaintiff had ever complained of any shoulder pain. (Ex. U, at 55:9–56:9.)

8.      When Mr. Limbacher returned from the x-rays, he informed Dr. Yu that he still needed his shoulder looked at. Dr. Yu said, "I'm done with him," and made a dismissive gesture with his hand before sending Mr. Limbacher away. (Ex. BB, at 36:19–37:5.)

**Response:** Disputed. Medical records from November 13, 2017, by Dr. Yu, do not mention a shoulder injury. (Dkt. #115, Ex. 5) Dr. Yu did not report that Plaintiff had ever complained of any shoulder pain. (Ex. U, at 55:9–56:9.)

9.  Although Dr. Yu failed to perform an examination of Mr. Limbacher's shoulder, Dr. Yu admitted that when a patient complains of a shoulder injury, Dr. Yu should perform a physical examination of the shoulder. (Ex. U, at 21:2–4.) Dr. Yu also admitted that if his physical examination led him to suspect a dislocation, he would order an x-ray. (*Id.* at 22:6–23:1.) If a patient disclosed their shoulder pain, he would reduce it and "then the patient needs to be followed up with an orthopedic surgeon to make sure it is healing properly." (*Id.* at 30:16–31:4.)

**Response:** Disputed in part as to Dr. Yu's failure to perform an examination of Mr. Limbacher's shoulder and admitted as to the remaining assertions. Plaintiff never complained of any shoulder pain to Dr. Yu. (Ex. U, at 55:9–56:9.)

10.  Dr. Yu did not examine Mr. Limbacher's shoulder, did not order an x-ray of Mr. Limbacher's shoulder; did not order an MRI of the shoulder, and did not refer Mr. Limbacher to an orthopedic doctor for a follow up appointment. (*See* Ex. T (showing an absence of treatment).)

**Response:** Disputed in part, as to the characterization of Exhibit T as "showing an absence of treatment," and admitted as to the remaining assertions. Dr. Yu did not treat Plaintiff for shoulder issues because no shoulder issues or pain were reported to him. (Ex. U, at 55:9–56:9.)

11.  Dr. Yu's failure to even examine Mr. Limbacher's left shoulder set the course for three years of poor treatment and subsequent pathology in the joint. As Dr. Herrington explained:

> [A]ppropriate attention to the left shoulder by Dr. Yu on 11/13/17, as required by standard of care, on a more likely than not basis would have resulted in a left shoulder dislocation being either confirmed or at least clinically suspected. This in turn on a more likely than not basis would have influenced clinical decision making by subsequent providers and would have put Mr. Limbacher in a better position of

having his shoulder dislocation timely treated with the development of glenohumeral arthritis potentially delayed or even prevented.

(Ex. S, at 15.)

**Response:** Disputed as an unproven hypothetical based on assertions not in evidence. Plaintiff never reported injuring his shoulder to Dr. Yu, so there was no need for Dr. Yu to examine Plaintiff's shoulder. (Dkt. #115, Ex. 5) When Plaintiff did complain about his shoulder, he received appropriate care. (Dkt. #115, Ex. 8; Dkt #115, Ex. 9)

   **b.    Subsequent Medical Visits**

   12.    From the time of his initial injury on November 13, 2017, through his release from custody, Mr. Limbacher experienced debilitating, recurring shoulder pain and limited use and function in the shoulder joint. (Ex. BB, at 99:8–101:5.)

   **Response:** Disputed.

   13.    Mr. Limbacher submitted over 12 Health Services Request Forms complaining of acute left shoulder pain and limitations on the function of that joint. (Ex. A-E, G, J-N, CC). All of these Request Forms and other medical records were available to treating providers on their electronic medical record system. (Ex. Z, at 38:3–14, 43:15–22.) The text of each Request Form is copied and made part of the medical record. (*Id.* at 42:8–43:22.)

   **Response:** Admitted in part as to Plaintiff's submission of over 12 Health Services Request Forms and Disputed as to all remaining assertions. In the cited material Dr. McCarthy did not state anything to the effect of all request forms and other medical records being available to all treating providers on their electronic record system, nor that the text of each request form is copied and made a part of the medical record.

14.     Despite Mr. Limbacher's repeated reports of severe shoulder pain, disability, and impaired function, not one of the Defendants took it upon themselves to make an accurate diagnosis of Mr. Limbacher's shoulder injury or to provide effective treatment for the injury.

**Response:** Disputed. Dr. Yu conducted a physical examination of Plaintiff on November 13, 2017, during the examination, Plaintiff made no mention of a shoulder injury. (Dkt. 115, Ex. 5; Ex. 6 at 45:15-24, 46:1-9) Plaintiff reported to Defendant Trammell on November 29, 2017, that his left shoulder was decreasing in pain. (Dkt. 115, Ex. 9) Plaintiff did not report a shoulder injury to Defendant Sims on January 30, 2018. (Dkt. 115, Ex. 10; Ex. 11, at 77:12-21) On March 2, 2018, Plaintiff made no mention of his left shoulder to Defendant Trammell. (Dkt. 115, Ex. 27 at pg.1, 3) On May 7, 2018, Plaintiff made no mention of his left shoulder to Defendant Trammell. (*Id*. at pg.5) On May 29, 2018, Plaintiff made no mention of his left shoulder to Defendant Trammell. (Dkt. 115, Ex. 28 at pg.5) On October 2, 2018, Plaintiff left shoulder is examined by Defendant Dr. McCarthy and a treatment plan is created. (Dkt. 115, Ex. 14 at pg. 4) On October 9, 2018, Plaintiff is seen by Defendant Trammell regarding his shoulder injury that he saw Defendant McCarthy 7 days prior. (Dkt. 115, Ex. 16) On November 13, 2018, Plaintiff is seen by Defendant Davis regarding his left shoulder injury. (Dkt. 115, Ex. 17) On December 4, 2018, Plaintiff meets again with Dr. McCarthy regarding his left shoulder, Plaintiff rejects treatment plan of cortisone shots. (Dkt. 115, Ex 19. at pg. 1, 4)

15.     Not one of the Defendants who treated Mr. Limbacher after the date of injury timely referred Mr. Limbacher for further imaging tests or to an orthopedic specialist for treatment.

**Response:** Disputed.  On November 13, 2017, the date on injury, Dr. Yu ordered x-rays of Plaintiff's neck and back. (Dkt. 115, Ex. 5) On May 7, 2018, Defendant Trammell orders MRI of Plaintiff's neck and back. (Dkt. 115, Ex. 28 at pg. 5) On October 2, 2018, Dr McCarthy orders x-

rays of Plaintiff's left shoulder. (Dkt. 115, Ex. 14 at pg.4) Admitted in part that medical records do not indicate a referral to orthopedics by Defendants.

16. On November 14, 2017, the day after the injury, Mr. Limbacher submitted a Health Services Request Form ("HSRF") complaining that Dr. Yu had not treated all of Mr. Limbacher's injuries: "My...left shoulder...[is] in severe pain from the fall I took in Ms. Jardine's chair yesterday. I do not feel that all my injuries were treated and looked at properly (sic)." (Ex. V.)

**Response:** Admitted that Plaintiff submitted the aforementioned HSRF labeled as Exhibit V. Disputed that HSRF filed on November 14, 2017, mentions Dr. Yu.

17. On November 17, 2017, Mr. Limbacher submitted another HSRF begging for someone to treat his neck, shoulder, and back pain: "I'm still having severe neck, shoulder and back pain. My left arm and left leg are numb. It's difficult to walk. Something is wrong. PLEASE HELP!" (Ex. A).

**Response:** Admitted that Plaintiff submitted the aforementioned HSRF labeled as Exhibit A.

18. On November 22, 2017, Mr. Limbacher submitted yet another HSRF asking someone to see him about his neck, left shoulder, back, leg, and knee: "I still have pain in my neck, left should and back, left leg and knee. My left arm goes numb. .... Something is wrong." (Ex. CC.)

**Response:** Admitted that Plaintiff submitted the aforementioned HSRF labeled as Exhibit CC.

19. On November 29, 2017, Mr. Limbacher was seen by P.A. Trammell. Ex. 9. P.A. Trammell told Mr. Limbacher that he would schedule Mr. Limbacher for an orthopedic appointment. (Ex. BB, at 44:4–15.) P.A. Trammell did not schedule an appointment with an orthopedic specialist. (*See* Ex. W (absence of referral).

**Response:** Admitted in part that on November 29, 2017, Plaintiff saw P.A. Trammell. Disputed that Trammell told Plaintiff that he would schedule an orthopedic appointment, and likewise disputed as to any characterization of Exhibit W as showing an absence of referral, when such was not required in the first place. As the medical record on November 29, 2017, does not mention a referral or conversation regarding orthopedics. (Exhibit W)

20.     On December 14, 2017, Mr. Limbacher submitted another HSRF asking to see a doctor about his "severe pain in my neck, back, left shoulder and knee." (Ex. B.)

**Response:** Admitted hat Plaintiff submitted the aforementioned HSRF labeled as Exhibit B.

21.     On January 8, 2018, Mr. Limbacher submitted another HSRF asking to see a doctor for his neck, back, shoulder, and knee pain caused by the November 13, 2017 accident. (Ex. C.)

**Response:** Admitted in part that Plaintiff submitted the aforementioned HSRF labeled as Exhibit C.

22.     Mr. Limbacher submitted another HSRF on January 18, 2018 complaining of neck and back pain that was causing severe headaches. (Ex. D.)

**Response:** Admitted in part that Plaintiff submitted the aforementioned HSRF labeled as Exhibit D.

23.     Having still not seen a doctor, Mr. Limbacher submitted another HSRF on January 26, 2018. Mr. Limbacher complained that he needed additional medical attention for his back, neck, left shoulder, and knee pain. He noted that "[t]he pain from my accident has existed for more than 2 months. ... My many requests have gone unanswered." (Ex. E.)

**Response:** Admitted in part that Plaintiff submitted the aforementioned HSRF labeled as Exhibit E.

24. On January 30, 2018, Mr. Limbacher saw P.A. Sims. Mr. Limbacher discussed his left shoulder with P.A. Sims. P.A. Sims expressed surprise that Mr. Limbacher had not been referred to orthopedics given the amount of time that had passed since the accident. (Ex. BB, at 49:6–18.) P.A. Sims referred Mr. Limbacher for physical therapy for his lower back but not for his shoulder. (Ex. DD (referral to physical therapy for "chronic LBP").)

**Response:** Admitted in part that Plaintiff saw P.A. Sims on January 30, 2018, and that P.A. Sims referred Plaintiff to Physical Therapy for his lower back. Disputed as to any assertion that Plaintiff discussed his left shoulder with P.A. Sims, that P.A. Sims expressed any kind of reaction to Plaintiff's non referral to orthopedics, as well as any characterization of Exhibit DD as offering any evidentiary support as no such Exhibit was filed. Defendant Sims had no conversation with Plaintiff regarding being referred to orthopedics. (Ex. Y, at 79: 12-21)

25. Mr. Limbacher saw a physical therapist on February 20, 2018. The appointment focused on Mr. Limbacher's back, although some of the exercises did involve the shoulders. (Ex. F at 3.) He was given "a sheet of paper with exercises to take back to [his] cell to do at [his] own time." (Ex. BB, at 50:24–51:19.) Mr. Limbacher attempted the prescribed exercises. Instead of seeing the improvement that he was told to expect, the exercises "made it worse. It wasn't good for [him]." (*Id.* at 51:20–52:5.)

**Response:** Admitted in part that Plaintiff saw a Physical Therapist on February 20, 2019, and that the appointment focused primarily on his back, with mention of some involvement of the shoulders. Disputed as Plaintiff stated on May 7, 2018, that he was receiving little relief with physical therapy, not that it was making it worse. (Dkt. 115, at Ex. 27, pg. 5)

26. Mr. Limbacher submitted another HSRF on February 21, 2018, complaining that his neck and back were "still in severe pain." (Ex. G.)

9

**Response:** Admitted that Plaintiff submitted the aforementioned HSRF labeled as Exhibit G.

27. Mr. Limbacher saw P.A. Trammell on March 2 and again on May 7, 2018. (Ex. H and Ex. I.) Mr. Limbacher reported severe shoulder pain, reminded P.A. Trammel of his prior commitment to refer Mr. Limbacher to an orthopedic specialist, and each time requested to see a specialist. (Ex. BB, at 53:12–57:2; 62:18–64:18.) In the report from the May 7, 2018 visit, P.A. Trammell noted that Mr. Limbacher was suffering from chronic neck, bilateral upper extremities ("BUE"), and lower back pain and that Mr. Limbacher experienced little relief with physical therapy. (Ex. I at 1.)

**Response:** Admitted in part that Plaintiff saw P.A. Trammell on March 2, 2018, and May 7, 2018, as well as that the report from the May 7, 2018, visit noted Plaintiff "was suffering from chronic neck, bilateral upper extremities, and lower back pain and that [he] experienced little relief with physical therapy." Disputed as the medical records do not mention a communication or referral to an orthopedic specialist. (Ex. I at 1; Ex. H)

28. Mr. Limbacher saw P.A. Trammell again on May 29, 2018, for continuing chronic neck, BUE, and lower back pain. (Ex. EE.)

**Response:** Admitted.

29. Despite the many indications that Mr. Limbacher needed to see an orthopedist, and P.A. Trammell's verbal acknowledgements that Mr. Limbacher needed a specialist referral, P.A. Trammel never made a referral or followed-up to assure that Mr. Limbacher saw a specialist. (*See* Ex. H, I and AH (absence of referrals).)

**Response:** Admitted in part that P.A. Trammell never made a referral or followed-up to assure that Plaintiff saw a specialist and Disputed. Dr. Yu conducted a physical examination of

Plaintiff on November 13, 2017, during the examination, Plaintiff made no mention of a shoulder injury. (Dkt. 115, Ex. 5; Ex. 6 at 45:15-24, 46:1-9) Plaintiff reported to Defendant Trammell on November 29, 2017, that his left shoulder was decreasing in pain. (Dkt. 115, Ex. 9) Plaintiff did not report a shoulder injury to Defendant Sims on January 30, 2018. (Dkt. 115, Ex. 10; Ex. 11, at 77:12-21) On March 2, 2018, Plaintiff made no mention of his left shoulder to Defendant Trammell. (Dkt. 115, Ex. 27 at pg.1, 3) On May 7, 2018, Plaintiff made no mention of his left shoulder to Defendant Trammell. (*Id*. at pg.5)

30.     When Mr. Limbacher met with Dr. McCarthy in October and December 2018, now roughly a year after the triggering injury, he complained of shoulder pain and limited movement in his arm. (Ex. AA, at 30:12–16; Ex. BB, at. 70:10–73:10; 74:22–78:8.)

**Response:** Disputed in part as to any representation of the existence of a 30th page in Plaintiff's Exhibit AA. Medical records do not show a shoulder injury at the time of the fall or at urging care a few hours after the fall on November 13, 2017. (Ex. T; Dkt. #115, Ex. 4)

31.     Dr. McCarthy admitted that by the time she saw him, Mr. Limbacher presented with a "chronic injury." (Ex. AA, at 115:14–22.) She admitted that, if a patient reported that his or her shoulder was "making noise and creaking" (Ex. AA, at 32:2–13; 121:20–122:2), it would be a serious complaint that she would "try to get to the bottom of what might be causing that perception." (Ex. AA, at 33:6–14.)

LL.  **Response:** Disputed, Exhibit AA is a Correspondence between Davis and McCarthy (Dec. 4, 2018)

32.     Dr. McCarthy's examination revealed limited left shoulder range of motion and "'catching and cracking' between 80 to 100 degrees." (Ex. AI, at 3).

**Response:** Disputed. No such Exhibit AI exists as filed with Plaintiff's Motion.

11

33.     She observed indications of a possible shoulder impingement, tendinopathy or rotator cuff injury (Ex. AA, at 76:22–78:6.)

**Response:** Admitted in part with regard to observations of possible rotator cuff injury. (Ex. AA, at 2.) Disputed otherwise, particularly as to any representation that Exhibit AA shows any specific testimony as represented by Dr. McCarthy.

34.     Despite the signs that something was seriously wrong with Mr. Limbacher's left shoulder, Dr. McCarthy did not "get to the bottom" and come to a conclusive diagnosis of the reasons for Mr. Limbacher's severe symptoms. (Ex. AA, at 72:24–73:8; 82:18–21; 83:24–84:2.)

**Response:** Disputed, as Exhibit AA AA is Correspondence between Davis and McCarthy (Dec. 4, 2018). Dr. McCarthy performed a physical examination of Plaintiff on October 2, 2018, and ordered x-rays of his shoulder after failing to recreate the feeling in Plaintiff's shoulder that he complained about. (Dkt. #115, Ex.14)

35.     Dr. McCarthy knew that "getting an accurate diagnosis of somebody who is at risk of further injury" can be "important part of delivering high quality medical care." (Ex. AA, at 114:15–20.) That is because "any traumatic injury can cause issues down the line," including that "a patient might need surgery to repair the pathology they might not have needed had it been treated promptly when [it] was first injured." (Ex. AA, at 117:5–14.) Dr. McCarthy's "knowledge and experience as a physician" was that "the sooner anything can be evaluated, ...you could say that it would be better for the patient." (Ex. AA, at. 117:16–118:5.) Yet, Dr. McCarthy did not order a shoulder MRI. (*Id.* at 92: 9–19.)

**Response:** Admitted in part, with regard to Dr. McCarthy not having ordered a shoulder MRI, and otherwise disputed, particularly as to any representation that Exhibit AA shows any such specific testimony as represented by Dr. McCarthy.  Dr. Yu conducted a physical examination of

Plaintiff on November 13, 2017. During the examination, Plaintiff made no mention of a shoulder injury. (Dkt. 115, Ex. 5; Ex. 6 at 45:15-24, 46:1-9) Dr. McCarthy performed a physical examination of Plaintiff on October 2, 2018, and ordered x-rays of his shoulder after failing to recreate the feeling in Plaintiff's shoulder that he complained about. (Dkt. #115, Ex.14)

36.　　When P.A. Davis asked if Dr. McCarthy wanted an MRI of Mr. Limbacher's shoulder, Dr. McCarthy rejected the suggestion. (Ex. AA 64:11–65:5; Ex. AA.)

**Response:** Admitted that Dr. McCarthy rejected Plaintiff's request for an MRI. Disputed in part as to any representation that Exhibit AA shows any such specific testimony as represented by Dr. McCarthy. On November 13, 2018, Plaintiff asked Defendant Davis if Dr. McCarthy could also order an MRI of his shoulder. (Dkt.#115, Ex. 17) Dr. McCarthy explained that Plaintiff showed significant osteoarthritis in his joint may account for his pain, this shoulder pain could be addressed with a simple injection. ((Dkt. #115, Ex. 18)

37.　　Mr. Limbacher requested that Dr. McCarthy refer him to an orthopedist. (Ex. BB. 72:12–73:10.)

**Response:** Admitted.

38.　　"Orthopedists are available at Cermak." (Ex. AA, at 88:5–12; 89:4–7; Ex. FF, at 27:18–29:16 (detainees may be referred from Cermak Health Services to Stroger Hospital, which provides full range of orthopedic services including shoulder replacement).)

**Response:** Disputed. The above cited material does not support the asserted statement of fact. Cermak Heath Services is different from Stroger Hospital. The cited material expressly states that detainees need to be referred to Stroger Hospital for orthopedic services, and not that orthoepedists are available at Cermak.

39.　　Dr. McCarthy did not consult an orthopedist. (Ex. AA, at 42:19–22.)

**Response:** Disputed in part as to any representation that Exhibit AA shows any such specific testimony as represented by Dr. McCarthy and admitted otherwise. Dr. McCarthy performed a physical examination of Plaintiff on October 2, 2018, and ordered x-rays of his shoulder after failing to recreate the feeling in Plaintiff's shoulder that he complained about. (Dkt. #115, Ex.14) On November 13, 2018, Plaintiff asked Defendant Davis if Dr. McCarthy could also order an MRI of his shoulder. (Dkt.#115, Ex. 17) Dr. McCarthy explained that Plaintiff showed significant osteoarthritis in his joint may account for his pain, this shoulder pain could be addressed with a simple injection. ((Dkt. #115, Ex. 18)

40.　Despite signs of chronic shoulder pathology, no definitive diagnosis, no MRI, and an express request for a referral by Mr. Limbacher, Dr. McCarthy did not refer Mr. Limbacher to an orthopedist, supposedly because he could have made the request himself. (Ex. AA, at 88:5–12.)

**Response:** Admitted in part that Dr. McCarthy did not refer Plaintiff to an orthopedist, and disputed otherwise, particularly as to any representation that Exhibit AA shows any such specific testimony as represented by Dr. McCarthy. Dr. McCarthy performed a physical examination of Plaintiff on October 2, 2018, and ordered x-rays of his shoulder after failing to recreate the feeling in Plaintiff's shoulder that he complained about. (Dkt. #115, Ex.14) On November 13, 2018, Plaintiff asked Defendant Davis if Dr. McCarthy could also order an MRI of his shoulder. (Dkt.#115, Ex. 17) Dr. McCarthy explained that Plaintiff showed significant osteoarthritis in his joint may account for his pain, this shoulder pain could be addressed with a simple injection. ((Dkt. #115, Ex. 18)

41.　Dr. McCarthy testified that, as was true here, if she was "not sure about the diagnosis of a patient," her uncertainty "can be" a factor that she considers "in deciding whether to refer a patient for consultation to another doctor." (Ex. AA, at 113:15–19.)

14

**Response:** Disputed as to any representation that Exhibit AA shows any such specific testimony as represented by Dr. McCarthy.

42.     Instead of identifying and addressing the root cause of Mr. Limbacher's recurring shoulder problems herself or referring Mr. Limbacher to a specialist who could do so, Dr. McCarthy offered only a cortisone injection that she knew would at best offer temporary relief to Mr. Limbacher, leaving the root cause of his symptoms unaddressed. (Ex. AA, at 81:6–10.)

**Response:** Admitted in part that Dr. McCarthy offered a cortisone injection to Plaintiff with regard to his shoulder problems, and otherwise disputed, particularly as to any representation that Exhibit AA shows any such specific testimony as represented by Dr. McCarthy. Dr. McCarthy performed a physical examination of Plaintiff on October 2, 2018, and ordered x-rays of his shoulder after failing to recreate the feeling in Plaintiff's shoulder that he complained about. (Dkt. #115, Ex.14) On November 13, 2018, Plaintiff asked Defendant Davis if Dr. McCarthy could also order an MRI of his shoulder. (Dkt.#115, Ex. 17) Dr. McCarthy explained that Plaintiff showed significant osteoarthritis in his joint may account for his pain, this shoulder pain could be addressed with a simple injection. ((Dkt. #115, Ex. 18) Dr. McCarthy advised that Plaintiff receive the injection to his left shoulder, as it would help with the pain and also could be diagnostic regarding his joint issue. Plaintiff refused the injection, stating that he feels pain coming from his neck and wants a follow up with neurosurgeon on his MRI results, that he is moving his shoulder, and the pain feels more radiating down from his neck. Plaintiff was informed to follow-up if he changes his mind on the injections. (Dkt. #115, Ex.19)

43.     Mr. Limbacher had reasons to decline the cortisone injection, including that it would not solve the main problem and he wanted to discuss the injection with an orthopedic surgeon. (Ex. BB, at 71:20–72:8, 76:11–78:8.)

**Response:** Disputed. The above cited material does not supply any medical reason to decline a cortisone injection or suggest that offering a cortisone injection was objectively unreasonable.

44. Dr. McCarthy insisted that she would not make an orthopedic referral unless and until Mr. Limbacher had the injection. (Ex. BB, at 76:15–78:8.)

**Response:** Disputed. On December 4, 2018, Dr. McCarthy advised that Plaintiff receive the injection to his left shoulder, as it would help with the pain and also could be diagnostic regarding his joint issue. Plaintiff refused the injection, stating that he feels pain coming from his neck and wants a follow up with neurosurgeon on his MRI results, that he is moving his shoulder, and the pain feels more radiating down from his neck. Plaintiff was informed to follow-up if he changes his mind on the injections. (Dkt. #115, Ex.19)

45. Dr. McCarthy admitted that the injection was at best a temporary solution and was not a permanent solution to the problems she observed in Mr. Limbacher's shoulder. (Ex. AA, at 81:6–10.)

**Response:** Disputed, particularly as to any representation that Exhibit AA shows any such specific testimony as represented by Dr. McCarthy.

46. As Dr. Herrington explained, offering a shoulder injection after the passage of almost a year where a patient is not recovering and continues to experience feelings of "catching and cracking" was objectively unreasonable and violated the standard of care for treating shoulder injuries. (Ex. S, at 18.) The standard of care required Dr. McCarthy to refer Mr. Limbacher for an MRI of his left shoulder and referral to an orthopedic surgeon. (*Id.*)

**Response:** Admitted in part, as this was only Plaintiff's expert's asserted opinion, but disputed with regard to having any basis in agreed and accepted fact. Disputed that Plaintiff's

shoulder injury was not recovering. Dr. Yu conducted a physical examination of Plaintiff on November 13, 2017, during the examination, Plaintiff made no mention of a shoulder injury. (Dkt. 115, Ex. 5; Ex. 6 at 45:15-24, 46:1-9) Plaintiff reported to Defendant Trammell on November 29, 2017, that his left shoulder was decreasing in pain. (Dkt. 115, Ex. 9) Plaintiff did not report a shoulder injury to Defendant Sims on January 30, 2018. (Dkt. 115, Ex. 10; Ex. 11, at 77:12-21) On March 2, 2018, Plaintiff made no mention of his left shoulder to Defendant Trammell. (Dkt. 115, Ex. 27 at pg.1, 3) On May 7, 2018, Plaintiff made no mention of his left shoulder to Defendant Trammell. (*Id.* at pg.5) On May 29, 2018, Plaintiff made no mention of his left shoulder to Defendant Trammell. (Dkt. 115, Ex. 28 at pg.5) On October 2, 2018, Plaintiff left shoulder is examined by Defendant Dr. McCarthy and a treatment plan is created. (Dkt. 115, Ex. 14 at pg. 4) On December 4, 2018, Dr. McCarthy advised that Plaintiff receive the injection to his left shoulder, as it would help with the pain and also could be diagnostic regarding his joint issue. Plaintiff refused the injection, stating that he feels pain coming from his neck and wants a follow up with neurosurgeon on his MRI results, that he is moving his shoulder, and the pain feels more radiating down from his neck. Plaintiff was informed to follow-up if he changes his mind on the injections. (Dkt. #115, Ex.19)

47.     P.A. Davis saw Mr. Limbacher on November 13, 2018, December 12, 2018, January 29, 2019, and July 24, 2019. (Ex. GG; Ex. HH; Ex. II.)

**Response:** Admitted.

48.     By the time of these appointments, Mr. Limbacher's medical record reflected numerous complaints about severe pain, discomfort and lack of function in his shoulder that had been continuing for more than a year. (*See supra* ¶¶ 13, 16–18, 20–24, 26–32.)

**Response:** Admitted.

17

49.     During the January 29, 2019 visit, Mr. Limbacher reported to P.A. Davis that "the pain or the condition of his left shoulder had never been addressed." (Ex. FF, at 89:12–90:9.)

**Response:** Disputed. While Plaintiff claims to have made that complaint, P.A. Davis immediately confirmed that "[i]t was clear ... it had been." (Ex. FF, at 90:11–15.)

50.     By July of 2019, twenty months had passed since Mr. Limbacher fell and injured his shoulder. Yet Mr. Limbacher returned again for medical treatment because the ongoing pain and limited shoulder mobility remained untreated and unresolved.

**Response:** Admitted in part as to the passing of twenty months since Plaintiff's fall and disputed with regard to all remaining assertions. Dr. Yu conducted a physical examination of Plaintiff on November 13, 2017, during the examination, Plaintiff made no mention of a shoulder injury. (Dkt. 115, Ex. 5; Ex. 6 at 45:15-24, 46:1-9) Plaintiff reported to Defendant Trammell on November 29, 2017, that his left shoulder was decreasing in pain. (Dkt. 115, Ex. 9) Plaintiff did not report a shoulder injury to Defendant Sims on January 30, 2018. (Dkt. 115, Ex. 10; Ex. 11, at 77:12-21) On March 2, 2018, Plaintiff made no mention of his left shoulder to Defendant Trammell. (Dkt. 115, Ex. 27 at pg.1, 3) On May 7, 2018, Plaintiff made no mention of his left shoulder to Defendant Trammell. (*Id*. at pg.5) On May 29, 2018, Plaintiff made no mention of his left shoulder to Defendant Trammell. (Dkt. 115, Ex. 28 at pg.5) On October 2, 2018, Plaintiff left shoulder is examined by Defendant Dr. McCarthy and a treatment plan is created. (Dkt. 115, Ex. 14 at pg. 4) On December 4, 2018, Dr. McCarthy advised that Plaintiff receive the injection to his left shoulder, as it would help with the pain and also could be diagnostic regarding his joint issue. Plaintiff refused the injection, stating that he feels pain coming from his neck and wants a follow up with neurosurgeon on his MRI results, that he is moving his shoulder, and the pain feels more

radiating down from his neck. Plaintiff was informed to follow-up if he changes his mind on the injections. (Dkt. #115, Ex.19)

51.     During his visits with P.A. Davis, Mr. Limbacher requested that P.A. Davis order an MRI. P.A. (Ex. BB, at 85:23–86:16.) Davis asked Dr. McCarthy to approve the shoulder MRI, but Dr. McCarthy declined. (Ex. FF, at 80:11–18; 84:6–19.)

**Response:** Admitted. Dr. McCarthy performed a physical examination of Plaintiff on October 2, 2018, and ordered x-rays of his shoulder after failing to recreate the feeling in Plaintiff's shoulder that he complained about. (Dkt. #115, Ex.14) On November 13, 2018, Plaintiff asked Defendant Davis if Dr. McCarthy could also order an MRI of his shoulder. (Dkt.#115, Ex. 17) Dr. McCarthy explained that Plaintiff showed significant osteoarthritis in his joint may account for his pain, this shoulder pain could be addressed with a simple injection. ((Dkt. #115, Ex. 18)

52.     Mr. Limbacher made subsequent requests for MRIs to P.A. Davis. (Ex. BB, at 87:15–89:12.) There is no record indication that P.A. Davis ever took any action in response to these later requests.

**Response:** Admitted that Plaintiff made a request for an MRI from PA Davis. Disputed that P.A. Davis never took any action in response to these requests, On November 13, 2018, Plaintiff asked Defendant Davis if Dr. McCarthy could also order an MRI of his shoulder. (Dkt.#115, Ex. 17) Dr. McCarthy explained that Plaintiff showed significant osteoarthritis in his joint may account for his pain, this shoulder pain could be addressed with a simple injection. (Dkt. #115, Ex. 18)

53.     Mr. Limbacher also requested to see an orthopedist. At one of her earliest appointments with Mr. Limbacher, P.A. Davis told Mr. Limbacher that he would see an orthopedic

doctor. Subsequently, P.A. Davis "changed her whole tune" and treated Mr. Limbacher dismissively. (Ex. BB, at 87:15–89:12.)

**Response:** Disputed. That P.A. Davis told that Plaintiff would see an orthopedic doctor. P.A. Davis messaged Dr. McCarthy on plaintiff's request for an MRI of his left shoulder. On November 13, 2018, Plaintiff asked Defendant Davis if Dr. McCarthy could also order an MRI of his shoulder. (Dkt.#115, Ex. 17)

54.     P.A. Davis could not identify the source of the severe pain that Mr. Limbacher reported. "Some people have pain that I can never tell." (Ex. FF, at 74:1–7.) She did, however, subjectively minimize the significance of the pain Mr. Limbacher reported, supposedly because he had suffered periodic dislocations since his initial injury. (*Id.* at 73:2–74:10.) She testified that "the pain he described is totally...out of portion to [shoulder dislocation]." (*Id.* at 73:2–11.)

**Response:** Admitted.

55.     Despite not ordering an MRI and not referring Mr. Limbacher to a specialist. P.A. Davis claimed in deposition that "[w]e knew exactly what he had." (Ex. FF, at 92:13–20.) She claimed Mr. Limbacher had no need for shoulder replacement surgery – "But that is not this case at all." (*Id.* at 86:20–87:12.)

56.     **Response:** Disputed. P.A. Davis in her quote, "(w)e knew exactly what he had" was referring to his diagnosis that was supported at the time by physical examination and x-rays. When asked if Plaintiff had been misdiagnosed. (Ex. FF. at 92:13-20). P.A. Davis was responding to a hypothetical during her deposition and not to Plaintiff's injury in her quote, "But this is not the case at all" (Ex. FF at 86:20–87:12.)When Mr. Limbacher was finally referred to an orthopedic doctor in 2020, the orthopedic doctors all agree that Mr. Limbacher requires shoulder replacement

surgery. (*See* Ex. R at 5 ("ultimate treatment for osteoarthritis would be an arthroplasty"); Ex. S, at 2.)

**Response:** Admitted in part, as this was only Plaintiff's experts' asserted opinions, but disputed with regard to having any basis in agreed and accepted fact.

57.     Mr. Limbacher's condition was never resolved by Defendants despite many months and many requests by him for care.

**Response:** Disputed.  Dr. Yu conducted a physical examination of Plaintiff on November 13, 2017, during the examination, Plaintiff made no mention of a shoulder injury. (Dkt. 115, Ex. 5; Ex. 6 at 45:15-24, 46:1-9) Plaintiff reported to Defendant Trammell on November 29, 2017, that his left shoulder was decreasing in pain. (Dkt. 115, Ex. 9) Plaintiff did not report a shoulder injury to Defendant Sims on January 30, 2018. (Dkt. 115, Ex. 10; Ex. 11, at 77:12-21) On March 2, 2018, Plaintiff made no mention of his left shoulder to Defendant Trammell. (Dkt. 115, Ex. 27 at pg.1, 3) On May 7, 2018, Plaintiff made no mention of his left shoulder to Defendant Trammell. (*Id*. at pg.5) On May 29, 2018, Plaintiff made no mention of his left shoulder to Defendant Trammell. (Dkt. 115, Ex. 28 at pg.5) On October 2, 2018, Plaintiff left shoulder is examined by Defendant Dr. McCarthy and a treatment plan is created. (Dkt. 115, Ex. 14 at pg. 4) On December 4, 2018, Dr. McCarthy advised that Plaintiff receive the injection to his left shoulder, as it would help with the pain and also could be diagnostic regarding his joint issue. Plaintiff refused the injection, stating that he feels pain coming from his neck and wants a follow up with neurosurgeon on his MRI results, that he is moving his shoulder, and the pain feels more radiating down from his neck. Plaintiff was informed to follow-up if he changes his mind on the injections. (Dkt. #115, Ex.19)

58.     Physician Assistant Sims saw Mr. Limbacher on January 30, 2018.

**Response:** Admitted.

59.     P.A. Sims admitted that orthopedics was not his "forte," saying that is "why I refer to my orthopedic specialist" for orthopedic problems. (Ex. Z, at 35:17–36:7.)

**Response:** Disputed. The cited portion of Dr. McCarthy's deposition transcript in no way represents what it is cited as supporting.

60.     A referral to an orthopedic specialist did not require anyone else's approval and was as easy as writing an order on the computer. (*Id.* at 17:13–18:6, 50:3–6.)

**Response:** Disputed. Again, the cited portion of Dr. McCarthy's deposition transcript in no way represents what it is cited as supporting.

61.     Notwithstanding P.A. Sims' recognition of his limited aptitude in orthopedics, he did not refer Mr. Limbacher to the orthopedic clinic. (Ex. Z, at 17:12, 35:17–36:15.)

**Response:** Disputed. Again, the cited portion of Dr. McCarthy's deposition transcript in no way represents what it is cited as supporting.

62.     Mr. Limbacher specifically alerted P.A. Sims to Mr. Limbacher's shoulder condition. (Ex. BB, at 48:24–49:18.)

**Response:** Disputed. On January 30, 2018, medical records do not show a conversation nor mention a left shoulder or referral to orthopedics. (Dkt. #115, Ex. 10/ Ex. 11 at 79:12-21)

63.     After checking the date of Mr. Limbacher's injury, P.A. Sims was "surprised that [Mr. Limbacher] had not seen an orthopedic specialist." (Ex. BB, at 49:9–49:18.)

**Response:** Disputed. On January 30, 2018, medical records do not show a conversation nor mention a left shoulder or referral to orthopedics. (Dkt. #115, Ex. 10/ Ex. 11 at 79:12-21)

64.    Health Services Request Forms readily accessible to P.A. (Ex. Z, at 43:15–17.) Sims showed that Mr. Limbacher previously complained about shoulder pain.

**Response:** Disputed. The cited portion of Dr. McCarthy's deposition transcript in no way represents what it is cited as supporting.

**c.    Standard of Care for Diagnosis and Treatment of a Traumatic Shoulder Injury and Chronic Shoulder Pain and Dysfunction**

65.    Defendants failed to meet the baseline standard of care in treating Mr. Limbacher's left shoulder injury by refusing to order an MRI, refusing to refer him to an orthopedic specialist, and refusing to alter his course of treatment despite years of debilitating pain and limited shoulder function with no material improvement. (Ex. S, at 2–3.)

**Response:** Disputed.  Dr. Yu conducted a physical examination of Plaintiff on November 13, 2017, during the examination, Plaintiff made no mention of a shoulder injury. (Dkt. 115, Ex. 5; Ex. 6 at 45:15-24, 46:1-9) Plaintiff reported to Defendant Trammell on November 29, 2017, that his left shoulder was decreasing in pain. (Dkt. 115, Ex. 9) Plaintiff did not report a shoulder injury to Defendant Sims on January 30, 2018. (Dkt. 115, Ex. 10; Ex. 11, at 77:12-21) On March 2, 2018, Plaintiff made no mention of his left shoulder to Defendant Trammell. (Dkt. 115, Ex. 27 at pg.1, 3) On May 7, 2018, Plaintiff made no mention of his left shoulder to Defendant Trammell. (*Id*. at pg.5) On May 29, 2018, Plaintiff made no mention of his left shoulder to Defendant Trammell. (Dkt. 115, Ex. 28 at pg.5) On October 2, 2018, Plaintiff left shoulder is examined by Defendant Dr. McCarthy and a treatment plan is created. (Dkt. 115, Ex. 14 at pg. 4) On October 9, 2018, Plaintiff is seen by Defendant Trammell regarding his shoulder injury that he saw Defendant McCarthy 7 days prior. (Dkt. 115, Ex. 16) On November 13, 2018, Plaintiff is seen by Defendant Davis regarding his left shoulder injury. (Dkt. 115, Ex. 17) On December 4, 2018, Dr.

McCarthy advised that Plaintiff receive the injection to his left shoulder, as it would help with the pain and also could be diagnostic regarding his joint issue. Plaintiff refused the injection, stating that he feels pain coming from his neck and wants a follow up with neurosurgeon on his MRI results, that he is moving his shoulder, and the pain feels more radiating down from his neck. Plaintiff was informed to follow-up if he changes his mind on the injections. (Dkt. #115, Ex.19) On May 29, 2019, Plaintiff meets with medical and has his pain medication changed upon his request. (Dkt. #115, Ex 24). On July 24, 2019, Plaintiff is seen by Defendant Davis and his pain medication was changed again. (Dkt. #115, Ex. 25)

66.     Dr. Ryan Herrington is a physician and expert in custodial medicine. As he explains in his Report, the "standard of care has to do with outcomes and how the best outcome for a particular patient, confronted with a particular set of clinical circumstances, can be realized as much as possible by the patient's providers and the system in which those providers are practicing." (Ex. S, at 4.)

**Response:** Admitted in part, as this was only Plaintiff's expert's asserted opinion, but disputed with regard to having any basis in agreed and accepted fact. Dr. Yu conducted a physical examination of Plaintiff on November 13, 2017, during the examination, Plaintiff made no mention of a shoulder injury. (Dkt. 115, Ex. 5; Ex. 6 at 45:15-24, 46:1-9) Plaintiff reported to Defendant Trammell on November 29, 2017, that his left shoulder was decreasing in pain. (Dkt. 115, Ex. 9) Plaintiff did not report a shoulder injury to Defendant Sims on January 30, 2018. (Dkt. 115, Ex. 10; Ex. 11, at 77:12-21) On March 2, 2018, Plaintiff made no mention of his left shoulder to Defendant Trammell. (Dkt. 115, Ex. 27 at pg.1, 3) On May 7, 2018, Plaintiff made no mention of his left shoulder to Defendant Trammell. (*Id*. at pg.5) On May 29, 2018, Plaintiff made no mention of his left shoulder to Defendant Trammell. (Dkt. 115, Ex. 28 at pg.5) On October 2, 2018, Plaintiff

left shoulder is examined by Defendant Dr. McCarthy and a treatment plan is created. (Dkt. 115, Ex. 14 at pg. 4) On October 9, 2018, Plaintiff is seen by Defendant Trammell regarding his shoulder injury that he saw Defendant McCarthy 7 days prior. (Dkt. 115, Ex. 16) On November 13, 2018, Plaintiff is seen by Defendant Davis regarding his left shoulder injury. (Dkt. 115, Ex. 17) On December 4, 2018, Dr. McCarthy advised that Plaintiff receive the injection to his left shoulder, as it would help with the pain and also could be diagnostic regarding his joint issue. Plaintiff refused the injection, stating that he feels pain coming from his neck and wants a follow up with neurosurgeon on his MRI results, that he is moving his shoulder, and the pain feels more radiating down from his neck. Plaintiff was informed to follow-up if he changes his mind on the injections. (Dkt. #115, Ex.19) On May 29, 2019, Plaintiff meets with medical and has his pain medication changed upon his request. (Dkt. #115, Ex 24). On July 24, 2019, Plaintiff is seen by Defendant Davis and his pain medication was changed again. (Dkt. #115, Ex. 25)

67.    Dr. Herrington reviewed all Mr. Limbacher's medical records to determine whether Defendants satisfied the required standard of care. Dr. Herrington concluded that each of the Defendants "deviated from accepted and prevailing standards of care." (Ex. S, at 12–13.)

**Response:** Admitted in part, as this was only Plaintiff's expert's asserted opinion, but disputed with regard to having any basis in agreed and accepted fact.  Dr. Yu conducted a physical examination of Plaintiff on November 13, 2017, during the examination, Plaintiff made no mention of a shoulder injury. (Dkt. 115, Ex. 5; Ex. 6 at 45:15-24, 46:1-9) Plaintiff reported to Defendant Trammell on November 29, 2017, that his left shoulder was decreasing in pain. (Dkt. 115, Ex. 9) Plaintiff did not report a shoulder injury to Defendant Sims on January 30, 2018. (Dkt. 115, Ex. 10; Ex. 11, at 77:12-21) On March 2, 2018, Plaintiff made no mention of his left shoulder to Defendant Trammell. (Dkt. 115, Ex. 27 at pg.1, 3) On May 7, 2018, Plaintiff made no mention of

his left shoulder to Defendant Trammell. (*Id.* at pg.5) On May 29, 2018, Plaintiff made no mention of his left shoulder to Defendant Trammell. (Dkt. 115, Ex. 28 at pg.5) On October 2, 2018, Plaintiff left shoulder is examined by Defendant Dr. McCarthy and a treatment plan is created. (Dkt. 115, Ex. 14 at pg. 4) On October 9, 2018, Plaintiff is seen by Defendant Trammell regarding his shoulder injury that he saw Defendant McCarthy 7 days prior. (Dkt. 115, Ex. 16) On November 13, 2018, Plaintiff is seen by Defendant Davis regarding his left shoulder injury. (Dkt. 115, Ex. 17) On December 4, 2018, Dr. McCarthy advised that Plaintiff receive the injection to his left shoulder, as it would help with the pain and also could be diagnostic regarding his joint issue. Plaintiff refused the injection, stating that he feels pain coming from his neck and wants a follow up with neurosurgeon on his MRI results, that he is moving his shoulder, and the pain feels more radiating down from his neck. Plaintiff was informed to follow-up if he changes his mind on the injections. (Dkt. #115, Ex.19) On May 29, 2019, Plaintiff meets with medical and has his pain medication changed upon his request. (Dkt. #115, Ex 24). On July 24, 2019, Plaintiff is seen by Defendant Davis and his pain medication was changed again. (Dkt. #115, Ex. 25)

68.     Dr. Sebastian Ko is an orthopedic surgeon and Mr. Limbacher's treating surgeon. For suspected shoulder injuries after a fall, Dr. Ko's Report explains "[t]he appropriate standard of care for a patient complaining of head, neck, back, and shoulder pain from a fall is to address all four areas of complaint." (Ex. R, at 2.) The standard of care demands that "the provider must address the shoulder injury...after confirming there are no injuries to the spine." (*Id.*) Then, "[i]f a patient reports pain and loss of motion after a traumatic injury, X-rays should be taken to determine whether the patient has any fractures or dislocations." (*Id.*) Next, "[i]f the X-rays do not confirm any fractures or dislocations, and the patient continues to have pain and loss of motion, an MRI should be performed to determine whether the patient has any occult factures, rotator cuff tear,

labral tear, or other intra-articular pathology." (*Id.* (emphasis added).) Importantly, and of direct application here, if a patient continues to experience chronic shoulder pain (pain for over three to six months) after physical therapy, a patient should be referred to an orthopedic specialist. (*Id.* at 3)

**Response:** Admitted in part, as this was only Plaintiff's expert's asserted opinion, but disputed with regard to having any basis in agreed and accepted fact. Disputed that Plaintiff complained of a shoulder injury at the time of in injury and the subsequent urgent care visit. (Dkt. #115, Ex. 4) Dr. Yu conducted a physical examination of Plaintiff on November 13, 2017, during the examination, Plaintiff made no mention of a shoulder injury. (Dkt. 115, Ex. 5; Ex. 6 at 45:15-24, 46:1-9)

69.     The standard of care for a traumatic shoulder injury is also outlined in the UpToDate system, an electronic clinical resource tool that was available to the Defendants on their computers. (Ex. U, at 26:21–28:1.) An UpToDate flow chart shows the diagnostic steps for a shoulder injury. (Ex. U, at 26:21–28:1; Ex. P at 50.)

**Response:** Admitted.

70.     None of the Defendants ever diagnosed Mr. Limbacher's medical problem.

**Response:** Disputed. Dr. Yu was never made aware of Plaintiff's left shoulder injury. (Dkt. #115, Ex.5; Dkt. #115, Ex. 6. pg. 45:15-24, pg. 46:1-9) On November 29, 2017, Plaintiff informed Defendant Trammell that his left shoulder was decreasing in pain. (Dkt. #115, Ex. 9 pg. 7). On January 30, 2018, Plaintiff made no mention of his left shoulder to Defendant Sims. (Dkt. #115, Ex. 10/ Ex. 11 at 79:12-21) On October 2, 2018, Plaintiff left shoulder is examined by Defendant Dr. McCarthy and a treatment plan is created. (Dkt. 115, Ex. 14 at pg. 4) On October 9, 2018, Plaintiff is seen by Defendant Trammell regarding his shoulder injury that he saw Defendant

McCarthy 7 days prior. (Dkt. 115, Ex. 16) On November 13, 2018, Plaintiff is seen by Defendant Davis regarding his left shoulder injury. (Dkt. 115, Ex. 17) On December 4, 2018, Dr. McCarthy advised that Plaintiff receive the injection to his left shoulder, as it would help with the pain and also could be diagnostic regarding his joint issue. Plaintiff refused the injection, stating that he feels pain coming from his neck and wants a follow up with neurosurgeon on his MRI results, that he is moving his shoulder, and the pain feels more radiating down from his neck. Plaintiff was informed to follow-up if he changes his mind on the injections. (Dkt. #115, Ex.19) On May 29, 2019, Plaintiff meets with medical and has his pain medication changed upon his request. (Dkt. #115, Ex 24). On July 24, 2019, Plaintiff is seen by Defendant Davis and his pain medication was changed again. (Dkt. #115, Ex. 25)

71.     None provided treatment that eliminated or significantly relieved Mr. Limbacher's chronic shoulder pain and impairment and restored Mr. Limbacher's shoulder to reasonable function.

**Response:** Disputed. On November 29, 2017, Plaintiff stated that his left shoulder was decreasing in pain. (Dkt. #115, Ex. 9 at pg. 2) On December 4, 2018, Plaintiff refused a cortisone injection that may have alleviated his pain. Plaintiff stated to Dr. McCarthy that he is moving his shoulder, and that pain feels more radiating down from his neck. (Dkt. #115, Ex. 19 pg. 4) On July 24, 2019, Plaintiff stated he had more relief from Diclofenac, a pain medication, and his medication was changed to reflect his wishes. (Dkt. #115, Ex. 25)

72.     None of the Defendants ordered a shoulder MRI or other advanced imaging.

**Response:** Admitted, because an MRI was not necessary.

73.     None of the Defendants referred Mr. Limbacher to an orthopedic physician who could provide the specialist care that Mr. Limbacher had not received from Defendants.

**Response:** Admitted, because referral to a specialist was not necessary.

74.     From the injury date through his release from custody some years later, Mr. Limbacher had to live with debilitating shoulder pain and lack of function, which significantly impaired his ability to sleep, to exercise, to dress and to otherwise engage in daily activities free from pain and discomfort. (Ex. BB, at 98:8–101:5.)

**Response:** Disputed. On November 29, 2017, Plaintiff stated that his left shoulder was decreasing in pain. (Dkt. #115, Ex. 9 at pg. 2) On December 4, 2018, Plaintiff refused a cortisone injection that may have alleviated his pain. Plaintiff stated to Dr. McCarthy that he is moving his shoulder, and that pain feels more radiating down from his neck. (Dkt. #115, Ex. 19 pg. 4) On July 24, 2019, Plaintiff stated he had more relief from Diclofenac, a pain medication, and his medication was changed to reflect his wishes. (Dkt. #115, Ex. 25)

Dated: January 30, 2024                                     Respectfully Submitted,

                                                By:     */s/ Zachary G. Stillman*
                                                        Zachary G. Stillman, One of the
                                                        Attorneys for Defendant Glenn
                                                        Trammell

                                                By:     */s/Alexander Preber*
                                                        Alexander Preber, One of the
                                                        Attorneys for Defendants

**DEVORE RADUNSKY LLC**
Jason E. DeVore (ARDC # 6242782)
Troy S. Radunsky (ARDC # 6269281)
Zachary G. Stillman (ARDC # 6342749)
230 W. Monroe Street, Ste. 230
Chicago, IL 60606
(312) 300-4479 telephone
jdevore@devoreradunsky.com
zstillman@devoreradunsky.com

Alexander Preber
Assistant State's Attorney
Civil Actions Bureau
Richard J. Daley Center, Room 520
Chicago, IL  60602
(312) 603-3141
Alexander.Preber@Cookcountysao.org

## CERTIFICATE OF SERVICE

The undersigned, an attorney, hereby certifies that **Defendants' LR 56.1(b)(3)(C) Response to Plaintiff's LR 56.1(b)(3) Statement of Additional Material Facts** was filed on January 30, 2024, with the Northern District of Illinois ECF System, serving a copy to all parties.

*/s/ Alexander Preber*
Alexander Preber